IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT

**SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 707 CAP |
| | : | |
| Appellee | : | Appeal from the Order entered on May |
| | : | 15, 2015 dismissing the Petition for |
| | : | Post-Conviction Relief in the Court of |
| v. | : | Common Pleas, Philadelphia County, |
| | : | Criminal Division at No. CP-51-CR- |
| | : | 0231581-1993 |
| JERMONT COX, | : | |
| | : | SUBMITTED: May 11, 2016 |
| Appellant | : | |

## OPINION

**JUSTICE DONOHUE**                                   **DECIDED: September 28, 2016**

In his second collateral capital appeal, Jermont Cox ("Cox") challenges the denial of his petition filed pursuant to the Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546 ("PCRA").[1] Cox contends that newly-discovered facts entitle him to a new trial. Following our thorough review, we agree with the PCRA court's determination that Cox's petition is untimely and therefore affirm its order.

This Court described the facts underlying Cox's conviction at length in conjunction with his direct appeal. *See* Commonwealth v. Cox, 728 A.2d 923, 926-29 (Pa. 1999). For the purposes of the present appeal, the pertinent facts may be summarized as follows. Cox was a low-level member of a Philadelphia drug operation

---

[1] This Court has jurisdiction over appeals from the grant or denial of post-conviction relief in death penalty cases. 42 Pa.C.S.A. § 9546(d).

run by Tim Walker ("Walker"). At some point in early 1992, two other members of the drug enterprise, Roosevelt Watson ("Watson") and Terence Stewart ("Stewart"), had a falling out with Walker and left Walker's organization. Watson subsequently robbed one of the houses out of which Walker sold drugs, and he and Stewart later stole Walker's car. In retribution, Walker instructed Larry Lee ("Lee"), a higher-ranking member of the drug organization, to kill both Watson and Stewart. Lee enlisted Cox to assist in the murders. On August 18, 1992, Watson was shot and killed outside of a nightclub. On November 8, 1992, Stewart was shot and killed while driving his vehicle with a woman named Tia Seidle ("Seidle"), who was not injured although she was sitting in the passenger seat of his car.

In January 1993, the Philadelphia Police arrested Cox for the murder of a man named Lawrence Davis. In an attempt to secure favorable treatment from the prosecution, Cox indicated that he had information about Stewart's murder. After being advised of his rights, Cox told the police that he was with Lee on the night of Stewart's murder. Cox stated that Lee instructed Cox to drive to a particular location, where they found Stewart's parked vehicle. Lee, who was carrying a semi-automatic weapon, told Cox that Stewart was one of the men who had stolen Walker's car. Cox told the police that when Lee identified Stewart as one of the men who stole Walker's car, he "knew what was happening." N.T., 4/10/1995, at 14. Cox and Lee waited for approximately half an hour until Stewart and Seidle exited a residence, entered Stewart's vehicle and drove away. Cox followed and pulled along the left side of Stewart's vehicle, at which time Lee lowered his window and fired multiple shots at Stewart. Stewart lost control of his vehicle and crashed into another car, and Cox and Lee immediately fled the scene. The following day, Lee paid Cox $500.

After Cox made this confession, the police arrested him for Stewart's murder. The police then asked Cox if he had any information about Watson's murder, which they believed was related to Stewart's murder. Cox told the police that he and Lee spent at least a week searching for Watson in order to kill him, but that they were unsuccessful. Cox told the police that Lee subsequently found and killed Watson by himself.

As Cox awaited trial on the Davis murder, he contacted the police to offer additional information about the Watson murder. Again, Cox wanted to share this information because he hoped to garner favorable treatment by cooperating with the police. Cox then confessed that he was with Lee when Lee received a telephonic page from Walker, informing them that Watson would be at a particular telephone booth outside of a nightclub. Cox drove them to the location described by Walker, where they waited for Watson. When Watson appeared, Lee exited the vehicle and shot Watson six times with a silver revolver. Cox then drove them from the scene of the shooting. Three days later, Lee paid Cox $500. Following this confession, the police charged Cox with Watson's murder.

The Watson and Stewart charges were joined for trial, which occurred in 1995. In addition to Cox's confessions to these murders and of relevance to this appeal, the Commonwealth introduced the testimony of Philadelphia Police Officer James O'Hara, who performed ballistics testing on a bullet recovered from Watson's body and two bullets recovered from Davis' body.[2] Officer O'Hara testified that markings on one of the Davis bullets matched the markings on the Watson bullet, which proved that they were fired from the same gun. Officer O'Hara could not formulate a conclusion concerning the second Davis bullet because, in his opinion, the second bullet was too

---

[2] Stewart was killed with a different weapon. The ballistics connection existed only between the Davis and Watson murders.

damaged to allow a comparison. The Commonwealth sought to couple this ballistics evidence with the testimony of Kimberly Little ("Little"). Little previously testified in the Davis trial that she observed Cox shoot and kill Davis.[3] Through Little's testimony and the ballistics evidence establishing that the same gun was used in the Watson and Davis murders, the Commonwealth sought to establish Cox's participation in the Watson murder. Over Cox's objections, the trial court permitted the Commonwealth to introduce this evidence for the limited purpose of establishing Cox's identity and access to the weapon used to murder Watson.

At the conclusion of the guilt phase of trial, the jury found Cox guilty of two counts of first-degree murder, conspiracy, and possessing instruments of crime.[4] The trial court sentenced him to life imprisonment for the Watson murder and death for the Stewart murder.[5] Cox appealed his death sentence to this Court, raising, inter alia, multiple claims of ineffective assistance of counsel in both the guilt and penalty phases.[6]

---

[3] Cox was convicted of first-degree murder, conspiracy and possessing instruments of crime in the Davis case.

[4] 18 Pa.C.S.A. §§ 2502(a), 903, 907.

[5] During the penalty phase, the jury found three aggravating factors: that Cox was paid to commit the murder; that in killing Stewart he created a grave risk of death to another person; and that he had been convicted of another murder. Cox, 728 A.2d at 928; see 42 Pa.C.S.A. § 9711(d)(2),(7),(11). The jury found that these aggravating circumstances outweighed the mitigating circumstances that Cox presented: that he acted under extreme duress or the substantial domination of another person and the catch-all mitigating factor. Cox, 728 A.2d at 928; see 42 Pa.C.S.A. § 9711(e)(5),(8).

[6] At the time of Cox's conviction, criminal defendants were required to raise claims of ineffective assistance of counsel at the first available opportunity. See, e.g., Commonwealth v. Hubbard, 372 A.2d 687, 695 n.6 (Pa. 1977). In 2002, this Court issued our decision in Commonwealth v. Grant, 813 A.2d 726 (Pa. 2002), in which we held that claims of ineffective assistance of counsel could not be raised on direct appeal, but must be deferred and presented on collateral appeal. Id. at 738. As Cox's appeal occurred three years prior to the issuance of our decision in Grant, he properly raised these claims of ineffective assistance of counsel on direct appeal.

We affirmed. Cox, 728 A.2d at 938. The United States Supreme Court subsequently denied Cox's petition for writ of certiorari. Cox v. Pennsylvania, 533 U.S. 904 (2001).

On February 6, 2001, Cox filed a pro se PCRA petition, and counsel was appointed. Counsel filed an amended petition raising numerous claims of ineffective assistance of trial and appellate counsel with regard to both the guilt and penalty phases of his trial. Of relevance, for the first time, Cox challenged the failure of trial counsel to conduct an independent investigation of the ballistics evidence and sought discovery of the ballistics evidence. Commonwealth v. Cox, 983 A.2d 666, 691-92 (Pa. 2009). The PCRA court denied Cox's guilt phase claims as a matter of law, but conducted an evidentiary hearing to address Cox's claims related to the penalty phase. Following the hearing, the PCRA court denied all of the penalty phase claims. Cox appealed the PCRA court's ruling, raising fourteen issues for consideration. This Court affirmed the PCRA court's denial of all fourteen claims. Id.

In 2010, Cox filed a habeas corpus petition in the Federal District Court for the Eastern District of Pennsylvania and requested discovery of the ballistics evidence. In 2012, the district court granted Cox's petition. Before turning the ballistics evidence over to Cox's expert for an evaluation, the Philadelphia Police Department reexamined the ballistics evidence and issued a new report. By the time of the district court's order, Officer O'Hara had retired, and the second examination was performed by Officers Kelly Walker and Jesus Cruz. The new report, issued on April 30, 2013, agreed with Officer O'Hara's conclusion that one Davis bullet and the Watson bullet were fired from the same gun. Contrary to Officer O'Hara's conclusion, however, the new report did not find the second Davis bullet to be too damaged to allow a comparison. Instead, based

upon the evaluation by Officers Walker and Cruz, the new report concluded that the second Davis bullet was not fired from the same gun that fired the Watson bullet.[7]

On June 28, 2013, based on the results of the second ballistics test, Cox filed the PCRA petition at issue in this appeal. He alleged due process violations based upon the admission of the ballistics evidence in the Watson murder; ineffective assistance of trial counsel for failing to seek independent ballistics testing; and ineffective assistance of appellate counsel for failing to raise this particular claim on direct appeal. PCRA Petition, 6/28/2013, at 8-16.[8] With respect to his due process claim, Cox contended that the new ballistics report undermined the link between the Davis and Watson shootings, and if this new evidence had been available at the time of the Watson/Stewart trial, "it is likely that the Davis evidence would have been excluded from the Watson/Stewart trial entirely." PCRA Petition, 6/28/2013, at 10. Without the Davis evidence, Cox argued, there would have been no evidence that he had a propensity for violence, and so there is a reasonable likelihood that he would not have been found guilty of the Stewart murder and sentenced to death. Id.

Recognizing that the petition was untimely, Cox attempted to establish an exception to the PCRA's time-bar by claiming that the new ballistics report contained a

---

[7]  It appears that Cox did not follow through with the independent testing he sought. Cox alluded to independent testing in his second PCRA petition, averring that "prior to the scheduled examination of [the] ballistics evidence by [**Cox's**] **expert**, an Assistant District Attorney … provided [Cox's] counsel with the new ballistics report prepared by [Officers Walker and Cruz]." PCRA Petition, 6/28/2013, at 5 (emphasis added). His claims are based entirely on the second ballistics report prepared by Officers Walker and Cruz and he never discusses any results obtained through independent testing.

[8]  Cox acknowledged that he has previously litigated the claim that trial counsel was ineffective for failing to have independent ballistics testing in his first PCRA petition, but contended that the newly-discovered evidence requires a different conclusion. PCRA Petition, 6/28/2013, at 15 n.6.

newly-discovered fact: that the second Davis bullet was fired from a different firearm. Id. at 5. The Commonwealth filed a motion to dismiss, to which Cox filed a response. In evaluating the timeliness of Cox's claim, the PCRA court applied a four-part test that considered whether Cox established that the evidence (1) could not have been discovered prior to the conclusion of the trial by the exercise of reasonable diligence; (2) is not merely cumulative; (3) would not be used solely to impeach the credibility of a witness; and (4) would likely result in a different verdict if a new trial were granted. PCRA Court Opinion, 7/29/2015, at 7 (quoting Commonwealth v. Perrin, 59 A.3d 633 (Pa. Super. 2011), *vacated*, 103 A.3d 1224 (Pa. 2014)). The PCRA court concluded that the evidence upon which Cox based his claim would be used only to impeach Little's testimony that Cox alone shot Davis and that it would not have changed the outcome of trial, and therefore, that Cox failed to establish the after-discovered evidence exception to the PCRA's time-bar. Id. at 8. This appeal followed.[9]

Cox raises two issues for our review:

> I. Did the PCRA court err when it dismissed the [p]etition as untimely where it was timely filed under 42 Pa.C.S.[A.] § 9545(b)(1)(ii), and where the PCRA court's timeliness analysis conflated a merits analysis and § 9543, in violation of this Court's holding in Commonwealth v. Lambert, 884 A.2d 848 (Pa. 2005)?

> II. Did the PCRA court err when it determined that the [p]etition was "without merit" where the after-discovered evidence entitles [] Cox to a new trial based on (A) Pennsylvania's after-discovered evidence standard, (B) [] Cox's Sixth and Fourteenth Amendment right [sic] to the effective assistance of counsel, and (C) [] Cox's Fifth, Eighth and Fourteenth Amendment rights to due process and a verdict based on reliable evidence?

---

[9] "Our review of a PCRA court's decision is limited to examining whether the PCRA court's findings of fact are supported by the record, and whether its conclusions of law are free from legal error." Commonwealth v. Mason, 130 A.3d 601, 617 (Pa. 2015).

Cox's Brief at 1-2.

Cox first argues that the PCRA court applied the wrong standard when assessing whether he established the newly-discovered fact exception to the PCRA's jurisdictional timeliness requirement. Id. at 14. Resolution of this issue requires consideration of the interplay between the provision of the PCRA that governs a court's jurisdiction to entertain a petition filed pursuant thereto and the provision that governs whether a claim is eligible for relief under the PCRA. We begin with the jurisdictional provision.

The PCRA requires that a petition seeking relief thereunder must be filed within one year of the date the petitioner's judgment of sentence becomes final. 42 Pa.C.S.A. § 9545(b)(1); Commonwealth v. Jones, 54 A.3d 14, 16 (Pa. 2012). "[A] judgment becomes final at the conclusion of direct review, including discretionary review in the Supreme Court of the United States and the Supreme Court of Pennsylvania, or at the expiration of time for seeking the review." 42 Pa.C.S.A. § 9545. This timeliness requirement is jurisdictional in nature, and a court may not address the merits of any claim raised unless the petition was timely filed or the petitioner proves that one of the three exceptions to the timeliness requirement applies. Jones, 54 A.3d at 16. These exceptions are:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S.A. § 9545(b)(1)(i)-(iii).[10]

Section 9545(b)(1)(ii) is the exception at issue in this appeal. When considering a claim seeking to invoke section 9545(b)(1)(ii), the petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence. Commonwealth v. Bennett, 930 A.2d 1264, 1270-72 (Pa. 2007). We have unequivocally explained that "the exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim." Commonwealth v. Abu-Jamal, 941 A.2d 1263, 1268 (Pa. 2008). Rather, the exception only requires a petitioner to "prove that the facts were unknown to him and that he exercised due diligence in discovering those facts." Bennett, 930 A.2d at 1270; see also Commonwealth v. Breakiron, 781 A.2d 94, 98 (Pa. 2001) (rejecting attempt to invoke section 9545(b)(1)(ii) because appellant failed to offer any evidence that he exercised due diligence in obtaining facts upon which his claim was based).

Once jurisdiction has been properly invoked (by establishing either that the petition was filed within one year of the date judgment became final or by establishing one of the three exceptions to the PCRA's time-bar), the relevant inquiry becomes whether the claim is cognizable under the PCRA. Section 9543, titled "Eligibility for relief," governs this inquiry. Among other requirements not pertinent to this appeal, section 9543 delineates seven classes of allegations that are eligible for relief under the PCRA. See 42 Pa.C.S.A. § 9543(a)(2). Of relevance here is the "after-discovered evidence" provision, which states that a claim alleging "the unavailability at the time of

---

[10] In addition to establishing one of these exceptions, any petition invoking one of these exceptions "shall be filed within [sixty] days of the date the claim could have been presented." 42 Pa.C.S.A. § 9545(b)(2). The ballistics report upon which Cox's claims are based was issued on April 30, 2013, and Cox filed his PCRA petition fifty-nine days later, on June 28, 2013. As such, Cox has satisfied this aspect of the test to establish an exception to the PCRA's time-bar.

trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced" is cognizable under the PCRA. 42 Pa.C.S.A. § 9543(a)(2)(vi). To establish such a claim, a petitioner must prove that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." Commonwealth v. D'Amato, 856 A.2d 806, 823 (Pa. 2004).

A comparison of this four factor test to the two factor section 9545(b)(1)(ii) timeliness exception test reveals a superficial resemblance, as both involve consideration of whether the facts or evidence upon which the claim is based were previously unknown to the petitioner and whether that information could have been discovered earlier, through the exercise of due diligence. Indeed, the section 9545(b)(1)(ii) timeliness test appears to be encompassed within the first factor of the section 9543(a)(2)(vi) eligibility test. In Bennett, however, we cautioned against the conclusion that there is an overlap between these provisions and reiterated that they remain distinct inquiries. Bennett, 930 A.2d at 1271. In so doing, we recognized that by referring to section 9545(b)(1)(ii) as an "after discovered evidence" exception, this Court unintentionally reinforced the confusion surrounding their application:

> We have repeatedly referred to this subsection as the "after-discovered evidence" exception to the one-year jurisdictional time limitation. *See* [Commonwealth v.] Peterkin, 722 A.2d [638,] 643 [(Pa. 1998)]. This shorthand reference was a misnomer, since the plain language of subsection (b)(1)(ii) does not require the petitioner to allege and prove a claim of "after-discovered evidence." Rather, it simply requires [the] petitioner to allege and prove that there were "facts" that were "unknown" to him and that he exercised "due diligence." In fact, when the Legislature intended a claim of "after-discovered evidence" to be recognized under the PCRA, it has done so by language closely tracking the after-discovered evidence requirements. *See* 42 Pa.C.S. § 9543[(a)(2)(vi)] (requiring that the evidence be "exculpatory" and "would have changed the outcome of the trial....").

By imprecisely referring to this subsection as the "after-discovered evidence" exception, we have ignored its plain language. Indeed, by employing the misnomer, we have erroneously engrafted Brady[FN]9 - like considerations into our analysis of subsection (b)(1)(ii) on more than one occasion. For example, in Commonwealth v. Johnson, [] 863 A.2d 423 ([Pa.] 2004), appellant argued that the Commonwealth violated Brady by withholding impeachment evidence and that this claim was cognizable under subsection (b)(1)(ii). We concluded that appellant could not establish that his Brady claim had merit, since the information could have been uncovered before or during trial. We further stated, "as we conclude that appellant's underlying Brady claim is without merit, we necessarily also conclude that appellant has failed to show that his petition falls within any of the exceptions to the PCRA's time requirements." Id. at 425–26; *see also* Commonwealth v. Breakiron, [] 781 A.2d 94, 98 ([Pa.] 2001). This conclusion conflated the two concepts as subsection (b)(1)(ii) does not contain the same requirements as a Brady claim.

------------------------------------------------

[FN]9  This refers to a claim brought under Brady v. Maryland, 373 U.S. 83 [] (1963), which challenges the Commonwealth's failure to produce material evidence. Specifically, a Brady claim requires a petitioner to show "(1) the prosecutor has suppressed evidence, (2) the evidence, whether exculpatory or impeaching, is helpful to the defendant, and (3) the suppression prejudiced the defendant." Commonwealth v. Carson, [] 913 A.2d 220, 244 ([Pa.] 2006).

Id. at 1270-71 (footnote eight omitted).[11]

------

[11]  The distinction between the use of the terms "facts" in section 9545(b)(1)(ii) and "evidence" in section 9543(a)(2)(vi) underscores their separate functions. The PCRA "provides for an action by which persons convicted of crimes they did not commit and persons serving illegal sentences may obtain collateral relief." 42 Pa.C.S.A. § 9542. Section 9545(b)(1)(ii) does not explicitly assist in providing such relief. The function of a section 9545(b)(1)(ii) analysis is that of a gatekeeper. Its inquiry, therefore, is limited to considering only the existence of a previously unknown fact that would allow a petitioner to avoid the strict one year time-bar. In contrast, the purpose of an inquiry under section 9543(a)(2)(vi) is to ensure that the claim presented is cognizable under the PCRA, and so it requires a more thorough analysis. As such, the matter upon which the claim is based is assessed in terms of its evidentiary merit, by considering the purpose for which it would be used and its potential impact on the outcome of trial. Through consideration of these factors, section 9543 assists the goal of the PCRA to provide
(continued…)

In this case, the PCRA court labored under the confusion described in Bennett. As set forth above, the PCRA court did not confine its consideration to the two factors relevant to the section 9545(b)(1)(ii) timeliness exception, but rather applied a four-part test that consisted of the section 9543(a)(2)(vi) factors. PCRA Court Opinion, 7/29/2015, at 7.[12] The PCRA court therefore erred in this regard. Its error, though, is not novel, especially in the context of cases in which the petitioner invokes both of these provisions in his or her quest for relief. This is not always the case, as the section 9545(b)(1)(ii) timeliness exception is not only invoked in connection with claims of after-discovered evidence as contemplated by section 9543(a)(2)(vi); i.e., claims based on exculpatory evidence that would result in a different verdict. For instance, petitioners have utilized the section 9545(b)(1)(ii) timeliness exception in an attempt to raise claims of the constructive denial of counsel, violations of Batson v. Kentucky, 476 U.S. 79 (1986), and claims of racial prejudice on the part of the trial judge. *See* Commonwealth v. Gamboa-Taylor, 67 A.3d 1245 (Pa. 2013); Commonwealth v. Hackett, 956 A.2d 978, 982-84 (Pa. 2008); Commonwealth v. Marshall, 47 A.3d 714, 721 (Pa. 2008); Commonwealth v. Lark, 746 A.2d 585, 588 (Pa. 2000); Commonwealth v. Abu-Jamal, 833 A.2d 719, 735 (Pa. 2003). In each of those cases, the nature of the claims raised did not implicate section 9543(a)(2)(vi), but rather, fell under other

_____

(…continued)
relief to the wrongfully convicted by ferreting out colorable claims of wrongful convictions.

[12] The PCRA court relied on the Superior Court's decision in Perrin as the source of this test. In Perrin, however, the Superior Court was reviewing the denial of the appellant's post-sentence motion seeking a new trial based upon an allegation of after-discovered evidence. Perrin, 59 A.3d at 665. Nonetheless, the factors set forth in Perrin and considered by the PCRA court are identical to the factors required under a section 9543(a)(2)(vi) analysis. *Compare* PCRA Court Opinion, 7/29/2015, at 7, *with* 42 Pa.C.S.A. § 9543(a)(2)(vi).

categories of claims eligible for relief. *See* 42 Pa.C.S.A. § 9543(a)(2)(i),(ii) (providing that claims of constitutional violations and ineffective assistance of counsel are cognizable under the PCRA). In such cases, after concluding that the petition satisfied the section 9545(b)(1)(ii) timeliness exception, the PCRA court would not proceed to a section 9543(a)(2)(vi) analysis.

In the present case, Cox sought to overcome the PCRA's time-bar by virtue of section 9545(b)(1)(ii). As such, Cox was required to establish that the fact upon which he bases his claim was unknown to him and that he could not have discovered it through due diligence. Bennett, 930 A.2d at 1270. The fact upon which Cox's claim is based is the conclusion that the second Davis bullet was not fired from the gun used in the Watson murder. This conclusion resulted from the ballistics analysis performed by Officers Walker and Cruz. Cox did not discover this fact until Officers Walker and Cruz issued their report on April 30, 2013; it was therefore unknown to him until that date.

Cox cannot, however, establish that he could not have ascertained this fact through the exercise of due diligence. Due diligence "does not require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort" to obtain the information upon which a claim is based. Commonwealth v. Edmiston, 65 A.3d 339, 348 (Pa. 2013). Cox's initial attempt to obtain the ballistics evidence was made in his first PCRA petition, in connection with his claim that trial counsel was ineffective for failing to seek independent ballistics testing. *See* Cox, 983 A.2d at 667, 691-92. The salient question is whether in so doing, Cox acted with reasonable effort to discover the facts upon which his claim is based.

Commonwealth v. Stokes, 959 A.2d 306 (Pa. 2008), is instructive in this regard. Stokes involves a capital defendant who was sentenced to death in 1983. This Court

affirmed his judgment of sentence in 1992[13] and the denial of his first PCRA petition in 2003. In 2004, the defendant filed a petition for writ of habeas corpus in federal court. In that petition, the defendant sought, for the first time, records maintained by the United States Postal Service and the Philadelphia Police Department's homicide division. The federal court granted his request. The defendant then filed a second PCRA petition based upon the records, alleging that they contained exculpatory evidence that the Commonwealth should have turned over at the time of trial. The defendant alleged that this Brady violation entitled him to a new trial.

Recognizing that his petition was untimely on its face, the defendant attempted to establish both the section 9545(b)(1)(i) and (ii) timeliness exceptions. The PCRA court found that both efforts failed and we agreed. Specifically concerning the due diligence requirement, we concluded that the defendant could not prove that he was duly diligent in discovering the information upon which his claims were based because the record revealed that he knew that the files existed for years before he attempted to obtain them. Id. at 310. We emphasized that the defendant did not explain why he did not request the files earlier, and "never asserted that the prosecution (or anyone else) prevented him from gaining access to these files in the [twelve] years between the date his direct appeal was decided and the date he ultimately sought the files." Id. at 310-311. The defendant's knowledge of the files, absent action to obtain them, precluded a finding of due diligence. Id.; see also Edmiston, 65 A.3d at 348 (holding that PCRA petitioner cannot establish due diligence based on alleged newly discovered

---

[13] The nine-year delay between Stokes' conviction and the disposition of his direct appeal was the result of protracted post-verdict proceedings, which included hearings that did not commence until 1987 and the ultimate denial of Stokes' post-verdict motions in October 1990. Stokes, 959 A.2d at 308.

photographs where record reveals that he knew photographs existed at the time of trial but did not raise claim until fifteen years later).

Returning to the present case, there is no question that Cox knew that more testing could be performed on the ballistics evidence at the time of trial in 1995. It was not until six years later, in 2001, that Cox first attempted to obtain the ballistics evidence through his first PCRA petition, in connection with his claim that trial counsel was ineffective for failing to seek independent testing thereof. By raising this claim in his first PCRA petition, Cox has effectively conceded that the testing could have been done at the time of trial. Moreover, Cox admitted to committing the Davis murder, and so Cox always knew that more than one firearm was used in the perpetration of that crime. *See* N.T., 4/4/1995, at 157-58. Nevertheless, Cox has never explained why he did not seek independent ballistics testing at the time of trial or on direct appeal.[14] Importantly, our review of the record reveals that Cox has never alleged that he asked trial counsel to seek independent ballistics testing or that his counsel refused such a request. Were that the situation, there could be a basis upon which to conclude that he attempted to act diligently, but that his efforts were thwarted by trial counsel. However, this is simply not the case here. Cox acknowledges that the testing could have been done at the time of trial, but offers no explanation as to why he did not seek such testing at that time. Instead, he took no action to obtain the additional testing for six years.[15] It is this

---

[14] As noted above, Cox's direct appeal was decided prior to our decision in Grant, and so he could have raised the claim that counsel was ineffective for failing to have independent ballistics testing performed at that point.

[15] There is no allegation here that a newly developed technology or newly discovered source led to the new fact. Cox makes no claim that Officers Walker and Cruz employed new testing methods or techniques, nor does he claim that they tested anything beyond what Officer O'Hara tested in connection with his report. This further weakens any attempt to claim that the fact was not ascertainable prior to the issuance of the second ballistics report.

lengthy, unexplained delay that defeats the possibility of a conclusion that Cox acted with reasonable effort to obtain ballistics testing. As in Stokes, Cox's failure to act, and failure to explain his lack of action, precludes a finding of due diligence.

Because Cox cannot establish that he acted with due diligence in seeking the ballistics evidence, he has failed to meet the section 9545(b)(1)(ii) exception to the PCRA's jurisdictional time-bar. Cox's PCRA petition is therefore untimely, and no court could have jurisdiction to reach the merits of the issue he raised therein. Accordingly, we affirm the PCRA court's order.

Order affirmed.

Justices Baer, Todd, Dougherty, Wecht and Mundy join the opinion.

Chief Justice Saylor concurs in the result.