[J-21-2017] [MO: Wecht, J.]

**IN THE SUPREME COURT OF PENNSYLVANIA
EASTERN DISTRICT**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | No. 726 CAP |
| | : | |
| Appellee | : | Appeal from the Order dated May 2, |
| | : | 2016 in the Court of Common Pleas, |
| | : | Lackawanna County, Criminal Division |
| v. | : | at No. CP-35-CR-0000748-1983. |
| | : | |
| | : | SUBMITTED:  January 30, 2017 |
| DAVID CHMIEL, | : | |
| | : | |
| Appellant | : | |

**DISSENTING OPINION**

**JUSTICE MUNDY**                                    **DECIDED:  November 22, 2017**

The Majority concludes that Appellant has satisfied his burden under the newly-discovered fact exception of the Post Conviction Relief Act's (PCRA) time-bar. Specifically, the Court inherently holds that the April 20, 2015 joint press release by the FBI and other entities underlies Appellant's constitutional and after-discovered evidence claims in his PCRA petition.  Because I conclude an unrelated federal agency's press release does not render timely under the PCRA a collateral attack on a state conviction obtained through scientific analysis conducted by a state employee, I respectfully dissent.

As this Court recently explained, "[w]hen considering a claim seeking to invoke section 9545(b)(1)(ii), the petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." *Commonwealth v. Cox*, 146 A.3d 221, 227 (Pa. 2016) (citation omitted).  Furthermore, this Court has explained that "[d]ue diligence does not

require perfect vigilance and punctilious care, but merely a showing the party has put forth reasonable effort to obtain the information upon which a claim is based." *Id.* at 230 (quoting *Commonwealth v. Edmiston*, 65 A.3d 339, 348 (Pa. 2013)).

The Majority agrees with Appellant that the joint press release contains two new facts. First, the FBI's admission that its own experts provided scientifically flawed testimony. Appellant's Brief at 16. In this regard, the Majority stresses that "[i]t is this concession, not the suspected unreliability of the forensic evidence as developed through scientific advancements, that triggers the sixty-day window within which [Appellant] was required to file his claim." Majority Op. at 15. Second, the Majority highlights the FBI's acknowledgement that it instructed various state analysts over the years in similar methods. *Id.* at 14.

By its plain text, the newly-discovered fact exception applies only to facts that are crucial to the underlying claims. *See* 42 Pa.C.S. § 9545(b)(1)(ii) (stating that a petition will be considered timely where "the facts *upon which the claim is predicated* were unknown to the petitioner and could not have been ascertained by the exercise of due diligence") (emphasis added). Here, Appellant's underlying claims in his PCRA petition are premised on the notion that forensic examiner George Surma's hair microscopy testimony was inaccurate and inadmissible.

Throughout the pendency of this case, Appellant has challenged the accuracy of hair microscopy analysis. Most importantly, Appellant's 2008 amended PCRA petition explicitly stated that "[a]n FBI study comparing microscopic and mitochondrial DNA analysis of hair found that the former was wrong approximately twelve percent of the time." Appellant's Amended PCRA Petition, 6/30/08, at ¶ 291. Further, an April 16, 2012 Washington Post article specifically stated that the DOJ "started reviewing cases *in the 1990s* after reports of sloppy work by examiners at the FBI lab was producing

unreliable forensic evidence in court trials." Commonwealth's Answer, 10/19/15, Exhibit A, at 1 (emphasis added). In addition, a July 10, 2012 Washington Post article noted the DOJ and FBI "launched a [new] review of thousands of criminal cases to determine whether any defendants were wrongfully convicted or deserve a new trial because of flawed forensic evidence[.]" *Id.* at Exhibit C, at 1. The review targeted over 10,000 "cases . . . where a microscopic hair examination conducted by the FBI was among the evidence in a case that resulted in a conviction." *Id.* The Washington Post followed up in its July 29, 2014 article stating, "[n]early every criminal case reviewed by the FBI and the [DOJ] as part of a massive investigation[,] started in 2012[,] of problems at the FBI lab has included flawed forensic testimony from the agency[.]" *Id.* at Exhibit D, at 1. Up to that point, "the FBI had reviewed about 160 cases[.]" *Id.* The article continued that the DOJ notified 23 defendants, which included 14 death-penalty prisoners in August 2013. All of these materials, at a minimum, reveal that the FBI and the DOJ had questioned hair microscopy analysis long before the April 20, 2015 joint press release.

The Majority does not dispute this, but emphasizes that the FBI's admissions and conclusions in the joint press release are the newly-discovered facts. *See* Majority Op. at 14-15. It is the Majority's view that these are the facts "upon which [Appellant's] claim[s are] predicated[.]" 42 Pa.C.S. § 9545(b)(1)(ii). The Majority does not explain how these facts are any more specific to Appellant's case than ones from his previous PCRA petition. For the FBI's admissions and conclusions to be considered newly-discovered facts, it must also be true that these purported new facts are so essential that the instant PCRA petition could not have been filed any earlier even with the exercise of due diligence. *See Cox*, 146 A.3d at 227 (citation omitted). As I stress above, Appellant was before this very Court in 2011 claiming Surma's analysis *in his*

*specific case* was flawed and "junk science."[1]  *See Commonwealth v. Chmiel*, 30 A.3d 1111, 1137-42 (Pa. 2011); Appellant's Amended PCRA Petition, 6/30/08, at ¶ 291.  The Majority cites no legal authority for the proposition that the FBI's agreement with Appellant as to the science is an essential factual predicate to a legal claim for relief in a case where the FBI was not involved.  *See* Majority Op. at 15.  Absent a direct connection between the FBI's press release and Appellant's claim, I cannot agree that Appellant has met his burden under Section 9545(b)(1)(ii).[2]  *See Cox*, 146 A.3d at 227.

Based on the foregoing, I conclude the PCRA court properly determined that Appellant's petition was untimely filed, and the court lacked jurisdiction to address his claims.  *See id.*  Because I would affirm the order of the PCRA court, I respectfully dissent.

---

[1] I point out this flaw in Appellant's argument not to show that his claims are previously litigated within the meaning of the PCRA, but rather to show that the FBI's admissions are not a necessary predicate for Appellant to litigate his specific claims.

[2] In addition, I agree with the Commonwealth that Appellant has not met his burden because the purported newly-discovered facts do not affect his case.  Appellant has not averred that he was informed the expert testimony from his trial was reviewed by the FBI or the DOJ.  To the contrary, the FBI neither conducted the relevant analysis in Appellant's case, nor did an FBI analyst testify at trial.  Surma was employed by the Pennsylvania State Police, and Appellant has not pointed to any evidence that supports the conclusion that Surma received training from the FBI.

In his discovery motion, Appellant did not state that he ever contacted Surma or the Pennsylvania State Police to ask whether he was trained by the FBI.  Additionally, Appellant's principal brief does not contain any argument pertaining to his motion for discovery.  Appellant's reply brief makes a reference to his discovery motion in the conclusion section, but does not raise any substantive argument.  *See* Appellant's Reply Brief at 5.