J-S01009-20
J-S01010-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ATWOOD WILLIAMS | : | |
| | : | No. 224 EDA 2019 |
| Appellant | | |

Appeal from the PCRA Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0824001-1993, CP-51-CR-0824211-1993

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ATWOOD WILLIAMS | : | |
| | : | |
| Appellant | : | No. 225 EDA 2019 |

Appeal from the PCRA Order Entered January 11, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0824001-1993, CP-51-CR-0824211-1993

BEFORE: BOWES, J., KUNSELMAN, J., and STRASSBURGER, J.[*]

MEMORANDUM BY BOWES, J.:                   **FILED: APRIL 16, 2021**

Atwood Williams appeals from the order that dismissed his petition filed pursuant to the Post Conviction Relief Act ("PCRA") in both of the above-captioned cases. We affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

The case filed at CP-51-CR-0824001-1993 is the "Big Marty's robbery," concerning Big Marty's Carpet in South Philadelphia, which was owned by spouses Robert Lomas and Robina Vilaubi. On the evening of July 12, 1993, Appellant and another man walked into the store, and Appellant conversed with Mr. Lomas about buying a carpet remnant. Appellant filled out some paperwork and gave Mr. Lomas a cash deposit. When Mr. Lomas went to ring up the sale, Appellant grabbed Ms. Vilaubi and pointed a gun at her head, while Appellant's co-defendant pushed Mr. Lomas away from the cash register and instructed him to get on his knees. After the co-defendant emptied the register and Mr. Lomas's pockets, Appellant ordered the victims to go to the back of the store. Thereafter, Appellant and the other man fled. ***See Commonwealth v. Williams***, 704 A.2d 167 (Pa.Super. 1997) (unpublished memorandum at 1-2). Appellant was convicted of two counts of robbery and a firearms offense, and this Court affirmed Appellant's judgment of sentence of an aggregate term of fifteen and one-half to forty-five years of imprisonment. ***Id***. Appellant's timely first PCRA petition resulted in no relief. ***See Commonwealth v. Williams***, 839 A.2d 1165 (Pa.Super. 2003) (unpublished memorandum), *appeal denied*, 847 A.2d 1285 (Pa. 2004).

The case at CP-51-CR-0824211-1993, the "Tony's Market robbery," was also committed on July 12, 1993. In that case, Appellant went to Tony's Market and purchased a lottery ticket. As Appellant engaged the clerk in conversation, a second man approached the clerk from behind, aimed a

firearm at him, and demanded all of the money. Appellant searched for additional money underneath the lottery machine and in the pockets of another customer before both perpetrators fled to a waiting vehicle. *See Commonwealth v. Williams*, 750 A.2d 379 (Pa.Super. 1999) (unpublished memorandum at 1-2) (cleaned up). The clerk identified Appellant from a photo lineup, and Appellant was convicted of two counts of robbery along with other crimes.

This Court affirmed Appellant's judgment of sentence of an aggregate term of twelve and one-half to forty-five years of imprisonment, rejecting Appellant's claim that "Nicholas DiPietro," alleged at some point to be a co-conspirator, would testify that Appellant was "innocent and did not do these crimes." *Id*. (unpublished memorandum at 17 n.9 (quoting Appellant's brief)). Appellant's first, timely PCRA petition, in which he claimed, *inter alia*, that trial counsel was ineffective in failing to call DiPietro at trial concerning his statement to other inmates that Appellant did not commit the Tony's Market Robbery, resulted in no relief. *See Commonwealth v. Williams*, 813 A.2d 911 (Pa.Super. 2002) (unpublished memorandum at 2-4).

The PCRA court offered the following subsequent history of these cases.

> On August 5, 2010, [Appellant] filed an untimely PCRA petition [challenging his convictions for both the Big Marty's and Tony's Market robberies]. [Appellant] sought relief based on a recent letter from Teri B. Himebaugh, Esq. and an accompanying affidavit signed by her client, Mr. Nicodemo DiPietro ("DiPietro"), wherein he averred that he alone committed the Tony's Market Robbery and that he and another individual named Kareem were

responsible for the Big Marty's Robbery. In sum, DiPietro claimed that [Appellant] was not involved in either robbery.

. . . .

[Appellant] filed an amended petition and memorandum of law on September 3, 2010. On October 13, 2011, the Honorable Sheila Woods-Skipper issued a Rule 907 notice. [Appellant] filed an untimely response to the notice on November 7, 2011. On May 13, 2014, [Appellant] filed a "Petition for Writ of Mandamus" because his PCRA was never formally dismissed. On June 2, 2014, the Superior Court issued an order denying the "Petition for Writ of Mandamus."

On February 23, 2015, [Appellant] filed a *pro se* petition for writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of Pennsylvania. The District Court stayed the *habeas corpus* action pending resolution of [Appellant]'s PCRA [petition].

On January 28, 2016, [Appellant] filed a *pro se* amended PCRA petition. Court appointed counsel, James R. Lloyd III, Esq., entered his appearance on February 16, 2016. This case was administratively reassigned to this court on November 30, 2016. On April 10, 2017, counsel filed an amended PCRA on behalf of [Appellant]. Counsel filed a second amended PCRA petition on June 1, 2017. An evidentiary hearing took place before this court on October 15th, 2018, October 17th, 2018, and November 16th, 2018.

. . . .

During the evidentiary hearing, DiPietro testified that at the time the trials took place in 1994 and 1997, he was unaware that [Appellant] "was pinched for these robberies." He further testified that he was "pinched for all of them," but "at that time he was with a certain crony to make sure nobody came to court." DiPietro testified that he did not know [Appellant]. He first saw [Appellant] at the Pennsylvania State Correctional Institution ("SCI") at Graterford two months prior to the October 15, 2018 evidentiary hearing.

On cross-examination, DiPietro testified that he first heard of [Appellant] when [Appellant]'s family reached out to him and

- 4 -

explained that [Appellant] was attempting to contact him.[11] According to DiPietro, it was at this point that he reached out to Ms. Himebaugh. DiPietro stated that he committed the Big Marty's Robbery with Kareem in 1993 and the Tony's Market Robbery either days or weeks after, though he could not be sure.[12] Although he acknowledged that a third individual participated in the Big Marty's Robbery, DiPietro was unable to recall whether that individual entered the store or waited in the car. He also could not describe Kareem's appearance. As for the Tony's Market Robbery, DiPietro testified that he committed it by himself. DiPietro explained that these robberies were committed in order "to create an opportunity for extortion."

_____

[11] DiPietro also testified that he first heard about [Appellant] when somebody told him that another individual was incarcerated for DiPietro's crimes. After somebody "put DiPietro and [Appellant] together," DiPietro wrote an affidavit, however he never heard back from [Appellant].

[12] In fact, both robberies occurred on July 12, 1993.

On re-direct examination, DiPietro testified that he was not promised anything in return for the affidavit or his testimony.

[Appellant] testified that he received Ms. Himebaugh's letter dated July 12, 2010, along with a handwritten letter, on either July 13, 2010 or July 14, 2010. At the time, [Appellant] was incarcerated at SCI Huntingdon. On August 5, 2010 and September 3, 2010, [Appellant] filed two *pro se* PCRA petitions. [Appellant] testified that he later received a letter from the Innocence Project informing him that DiPietro had contacted their organization. Enclosed with the Innocence Project's letter was a second letter from Ms. Himebaugh dated July 24, 2015, as well as DiPietro's typed affidavit. [Appellant] stated that he did not recall receiving an affidavit from DiPietro prior to July of 2010. Finally, [Appellant] testified that his 2010 PCRA petition was never resolved, resulting in him filing a *habeas corpus* petition.

On cross-examination, [Appellant] testified that he was arrested on July 26, 1993 for both the Tony's Market and Big Marty's robberies. The first time [Appellant] heard of DiPietro was in his police paperwork, which he received in August of 1993. In 2000, [Appellant] came across a Philadelphia Daily News article

about DiPietro and his behavior following his murder conviction. In 2000, after reading the article, [Appellant] had his friend's mother, Ms. Anna White, send a letter to DiPietro, who did not respond. In either 2009 or 2010, [Appellant]'s daughter also sent a letter to DiPietro. [Appellant] testified that between 2000 and 2009 or 2010, he waited for DiPietro to contact him, while at the same time pursuing his appeals and trying to prove his innocence.

[Appellant] also testified that at the time of the Tony's Market Robbery trial in 1997, James Mugford, Esq. represented him. In 1997, [Appellant] asked Mr. Mugford to contact witness Tyrone Brown ("Brown"), who was incarcerated with DiPietro in New Jersey. Brown told [Appellant] that DiPietro claimed somebody else was incarcerated for robberies DiPietro committed.

Lastly, [Appellant] agreed that he mentioned DiPietro in his 2008 "Petition for Writ of Habeas Corpus and Motion to Vacate Void Judgment." Specifically, [Appellant] wrote, "Mr. DiPietro's testimony will be favorable to [Appellant] and will reflect the fact that it is newly discovered, and that he was not ever acquainted with [Appellant]; that he never committed any criminal act with [Appellant]; and that [Appellant] was not with him on July 12, 1993, [at] Tony's Deli Market."

On re-direct examination, [Appellant] reiterated that the letter accompanying Ms. Himebaugh's 2010 correspondence was the first written statement he received from DiPietro.

PCRA Court Opinion, 9/29/20, at 6, 1-3, 6-9 (cleaned up).

On January 11, 2019, the PCRA court dismissed Appellant's petition as untimely, concluding that Appellant failed to establish that he exercised due diligence in discovering the new facts upon which his claim was based. *Id*. at 9. Appellant filed timely notices of appeal at each of the docket numbers, including both numbers on each notice. The PCRA court filed an opinion indicating that quashal of the appeals was warranted pursuant to **Commonwealth v. Creese**, 216 A.3d 1142, 1143 (Pa.Super. 2019), and its

- 6 -

interpretation of *Commonwealth v. Walker*, 185 A.3d 969 (Pa. 2018). This Court sitting *en banc* subsequently held that, where an appellant files notices of appeal separately at each implicated docket number, the mandates of *Walker* have been satisfied regardless of the inclusion of additional docket numbers on each notice. *See Commonwealth v. Johnson*, 236 A.3d 1141 (Pa.Super. 2020) (*en banc*). Therefore, we remanded this case to the PCRA court for the preparation of a Pa.R.A.P. 1925(a) opinion explaining the reasons for its determination that Appellant's PCRA petition was untimely filed in August 2010.

The PCRA court complied, and Appellant filed a new brief[1] stating one question for our review: "Did the PCRA Court err and/or abuse its discretion when it denied [Appellant]'s petition under the PCRA as untimely filed despite [Appellant]'s claim that the petition was subject to an exception to the PCRA's time bar?" Appellant's brief at 5.

We begin with a review of the applicable legal principles. "The standard of review of an order dismissing a PCRA petition is whether that determination is supported by the evidence of record and is free of legal error." *Commonwealth v. Weimer*, 167 A.3d 78, 81 (Pa.Super. 2017). To prevail, Appellant must persuade this Court both "that the PCRA court erred and that

_____

[1] Despite requesting and obtaining multiple extensions of time, the Commonwealth did not file a brief.

relief is due." ***Commonwealth v. Stansbury***, 219 A.3d 157, 161 (Pa.Super. 2019) (internal quotation marks omitted).

Before a PCRA petitioner can obtain review of the substance of his claims, he must first establish the timeliness of his petition. For a petition to be timely under the PCRA, it must be filed within one year of the date that the petitioner's judgment of sentence became final. ***See*** 42 Pa.C.S. § 9545(b)(1). Appellant's petition, filed roughly a decade after his judgments of sentence became final in these cases, is patently untimely. Thus, unless Appellant pled and proved one of the three exceptions to the PCRA time-bar outlined in 42 Pa.C.S. § 9545(b)(1), we must conclude that the PCRA court properly dismissed his petition without reaching the merits of his claim. ***See***, ***e.g.***, ***Commonwealth v. Ballance***, 203 A.3d 1027, 1031 (Pa.Super. 2019) ("The PCRA time limitations implicate our jurisdiction and may not be altered or disregarded in order to address the merits of the petition." (cleaned up)).

Appellant acknowledged the untimeliness of his petition, but pled that it satisfied the newly-discovered facts exception codified at 42 Pa.C.S. § 9545(b)(1)(iii). A petitioner relying upon the newly-discovered-facts exception must establish that: "(1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence." ***Commonwealth v. Cox***, 146 A.3d 221, 227 (Pa. 2016) (citation omitted). While "[d]ue diligence requires neither perfect vigilance nor punctilious care," it does require "reasonable efforts by a

petitioner, based on the particular circumstances, to uncover facts that may support a claim for collateral relief." ***Commonwealth v. Smith***, 194 A.3d 126, 134 (Pa.Super. 2018) (internal quotation marks omitted). To succeed in invoking this exception, the petitioner must "plead and prove that the information on which his claims are based could not have been obtained earlier despite the exercise of due diligence." ***Commonwealth v. Edmiston***, 65 A.3d 339, 346 (Pa. 2013).

Appellant satisfied the pleading aspect of invoking the exception. Specifically, Appellant alleged that on July 15, 2010, he received a communication from Attorney Heimbaugh including Mr. DiPietro's affidavit detailing his guilt and Appellant's innocence. ***See*** PCRA Petition, 8/5/10, at 4-5; Amended PCRA Petition, 4/10/17, at ¶¶ 39-42. Further, Appellant averred that he could not have discovered the information earlier with the exercise of due diligence because "DiPietro was purposely concealing his role, and the role of his co-conspirator until his disclosure to his attorney in 2010." Amended PCRA Petition, 4/10/17, at ¶ 42.

Appellant contends that he adduced sufficient evidence at the PCRA court's evidentiary hearing to prove that the elements of the newly-discovered facts exception were met. In addition to offering testimony to support the timeline of his discovering the facts in Mr. DiPietro's affidavit, he contends that he adduced sufficient evidence to establish that he acted with due diligence. Appellant notes that he remained incarcerated from the summer of 1993,

when he first learned of Mr. DiPietro's existence, until he received Ms. Himebaugh's letter in the summer of 2010, leaving him with a curtailed ability to act. *See* Appellant's brief at 46. Appellant "had never met DiPietro and did not know his whereabouts until happening upon a newspaper article in 2000." *Id*. "At that point, [Appellant] attempted to communicate with DiPietro by employing the assistance of friends and family members." *Id*. Appellant details these efforts as follows:

> The first attempt occurred in 2000, when [Appellant] employed the assistance of a friend's mother. She wrote to DiPietro. However, [Appellant] did not receive a response from DiPietro. At this point, DiPietro's own court records reflect that he was charged with — but not yet convicted of — murder. In addition, . . . DiPietro still enjoyed the privilege against self-incrimination. Thus, even though [Appellant] had no means to exact a statement from DiPietro, he attempted to at least establish lines of communication despite his incarceration.
>
> In 2009 or 2010, [Appellant's] daughter again tried to contact DiPietro by writing him. Notably, DiPietro testified that he received a letter from [Appellant]'s family, but he did not remember when he first received this letter. In fact, he testified that he threw the letter away because he was not concerned with [Appellant]. DiPietro was asked when he received the letter from [Appellant's] family and responded "I don't remember. I don't even know this kid. This kid is not a part of my life. I don t know. I read the letter and threw it out."
>
> Thus, continued efforts by [Appellant] still were unsuccessful in disclosing the information which forms the basis of his claim for PCRA relief. Indeed, DiPietro wrote to his own attorney in July of 2010 that, "I wasn't going to help [Appellant." Thus, the record below establishes that DiPietro was not willing to come forward with information helpful to [Appellant]. DiPietro eventually underwent a change of opinion on this matter after conferring with a new attorney in 2010 about his own challenge to the sentence he was serving.

*Id*. at 46-47 (citations omitted).

The PCRA court concluded that Appellant's "continued efforts" did not

amount to due diligence, explaining as follows:

> According to [Appellant], he first learned of DiPietro's name from police paperwork provided to him in August of 1993. Prior to the Tony's Market Robbery trial in 1997, [Appellant] also learned from Brown that DiPietro had admitted to committing the robberies for which another individual was incarcerated. At the time, [Appellant] asked his attorney to contact Brown. In 2000, after reading an article about DiPietro in the newspaper, [Appellant] had Ms. White send a letter to DiPietro. Later, in 2009, [Appellant]'s daughter sent DiPietro another letter. It was after this letter that [Appellant] received the correspondence from Teri Himebaugh. Between 2000 and 2009, however, [Appellant] made no attempts to contact DiPietro. Rather, he testified that he was waiting for DiPietro to contact him and proceeded with his appeals. [Appellant] does not explain why he neither attempted to contact DiPietro himself nor directed a friend or family member to do so during the period of time between 2000 and 2009. While it may be true that DiPietro would have ignored [Appellant]'s attempts to reach out or refused to come forward, this is speculative given that [Appellant] made no such effort.

PCRA Court Opinion, 9/29/20, at 9.

We discern no error of law or abuse of discretion on the part of the PCRA

court. The record supports the PCRA court's finding that Appellant had reason

to connect DiPietro to at least one of the robberies as early as 1993. Appellant

further had information that DiPietro had admitted his guilt for these robberies

before his second trial in 1997, and indeed raised the issue on direct appeal.[2]

_____

[2] Given that DiPietro had incriminated himself to Brown in 1997, Appellant's protestation that any additional efforts between then and 2010 would have been futile rings hollow.

- 11 -

Yet Appellant made zero attempts to secure evidence to support an after-discovered evidence claim based upon DiPietro's admission, or other evidence of DiPietro's culpability, in the nine or more years between asking a friend's mother to send a letter in 2000 and asking his daughter to send a letter in 2009 or 2010. Upon this evidence, we are not convinced that the PCRA court erred and relief is due. ***Accord Smith***, ***supra*** at 134 (affirming PCRA court's finding of a lack of due diligence in obtaining affidavit where the petitioner had been aware since 2000 that the affiant had given a statement, the affiant spoke with the petitioner's sister in 2011, but petitioner did not obtain the affidavit until 2014).

Rather, we conclude that the PCRA court properly held that Appellant failed to overcome the PCRA's time bar by establishing that the facts upon which his claim is based could not have been ascertained earlier by the exercise of due diligence. ***See Cox***, ***supra*** at 227. Therefore, the PCRA court properly dismissed his petition as untimely filed.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/16/21

- 12 -