J-S23030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| JONATHAN GRANT, | : | |
| | : | |
| Appellant | : | No. 3834 EDA 2017 |

Appeal from the PCRA Order November 3, 2017
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0003705-1991

BEFORE: SHOGAN, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                     **FILED JUNE 12, 2018**

*Pro se* Appellant Jonathan Grant appeals from the order dismissing his eleventh Post Conviction Relief Act[1] (PCRA) petition.  Appellant contends his petition is timely because of newly-discovered evidence, specifically a January 13, 1992 trial transcript.  We affirm.

In **Commonwealth v. Grant**, 3502 PHL 1992 (Pa. Super. Dec. 15, 1993) (**Grant 1**),[2] this Court, in resolving Appellant's direct appeal, set forth the factual background as follows:

> On the evening of April 15, 1991, Bensalem Township Police were summoned to the Bensalem Common Apartments where they found the dead body of Nora Adderly in an apartment which she

---

[*] Former Justice specially assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

[2] The caption and decision misspelled Appellant's first name as "Jonathon."

had shared with her boyfriend, [Appellant]. Downstairs neighbors, Peggy Sterling and John Krier, testified at [Appellant's] trial that they had heard a loud argument in the apartment earlier the same evening. The argument, they said, had grown progressively louder and had culminated in the sound of shots being fired, followed by a woman's scream. After a bullet had burst through their ceiling and become lodged in their bed, they called the police. The police, when they arrived, found Adderly's dead body in a pool of blood and ascertained that death had been caused by multiple gunshot wounds of the head, back and stomach. It was later determined that the shots had been fired from both a shotgun and a .22 caliber pistol.

In the early hours of the following morning, [Appellant] arrived at the home of his sister, Julia, who testified that [A]ppellant had then admitted killing Adderly. Leaving a shotgun and .22 caliber pistol at his sister's home and abandoning his car in a nearby alley, [A]ppellant fled to Savannah, Georgia, where he was later apprehended [on May 7, 1991].

*Id.* at 1-2.

At trial, Appellant testified on his behalf and admitted he shot the victim, but raised several defenses including accident, self-defense, diminished capacity, and intoxication. *See Commonwealth v. Grant*, 157 PHL 1995, at 3 (Pa. Super. Oct. 27, 1995) (*Grant 2*) (resolving Appellant's first PCRA petition). Needless to say, Appellant was present throughout trial.

On Friday, January 10, 1992 (the third day of trial), witnesses for the Commonwealth and Appellant testified. N.T., 1/10/92, at 1-205. On January 13, 1992 (the fourth and last day of trial), Detective Robert Shutter testified for the defense, and John Riley, an FBI witness, testified for the

Commonwealth about the lead used in the bullets.[3]  No other witness testified

that day.  Counsel delivered closing arguments, and the trial court charged

the jury.  The jury found Appellant guilty of first-degree murder, recklessly

endangering another person, possession of an instrument of crime, and flight

to avoid prosecution.  ***See generally*** N.T. Trial, 1/13/92, at 1-106.[4]

The jury was instructed to return on January 14, 1992, to deliberate on

Appellant's penalty.  ***Id.*** at 106.[5]  The jury, however, was unable to agree on

a sentence of death, and the court sentenced Appellant to mandatory life

imprisonment on January 14, 1992.  ***Grant 1***, at 1.

Appellant filed a direct appeal claiming

> the trial court erred when it (1) allowed evidence that he had had
> a shotgun and .22 caliber pistol in his possession prior to the
> shooting; (2) allowed testimony of prior criminal conduct; and (3)
> instructed the jury that a deliberate intent to kill could be inferred
> from the use of a deadly weapon upon a vital part of the victim's
> body.

---

[3] Appellant's seventh PCRA petition, which was filed on March 19, 2010, challenged Riley's January 13, 1992 testimony.

[4] As explained below, Appellant argues for the instant eleventh PCRA petition that he was unaware of the existence of the January 13, 1992 trial transcript in an attempt to overcome the PCRA's timebar.  We note that among the numerous timestamps on this transcript, this Court's earliest timestamp was November 30, 1992.

[5] The record does not establish whether a stenographer was present on January 14, 1992, let alone whether a transcription even existed.

*Id.* The **Grant 1** Court affirmed, and the Pennsylvania Supreme Court denied

Appellant's petition for allowance of appeal. **Commonwealth v. Grant**, 668

A.2d 1124 (Pa. Sept. 12, 1994) (table).[6]

### Appellant's First Ten PCRA Petitions

We briefly discuss Appellant's first ten PCRA petitions. Appellant filed a

timely first PCRA petition.[7]

On December 6, 1996,[8] *pro se* Appellant filed a second PCRA petition,

which the PCRA court denied on December 23, 1996, and this Court affirmed.

**Commonwealth v. Grant**, 2187 PHL 1997, at 2 (Pa. Super. Feb. 18, 1998)

(**Grant 3**). Appellant had claimed that the district attorney engaged in

_____

[6] Because the **Grant 1** Court held Appellant's jury instruction issue lacked merit, it had the January 13, 1992 transcript. Thus, Appellant knew or should have known the transcript existed on or before December 15, 1993, the date of the **Grant 1** decision.

[7] The PCRA court denied relief, the **Grant 2** Court affirmed, and the Pennsylvania Supreme Court denied *allocatur*. **Commonwealth v. Grant**, 676 A.2d 1195 (Pa. May 8, 1996) (table). Appellant had alleged that trial and appellate counsel "were ineffective for not objecting to the inaccurate statement of the law of third degree murder after the jury requested clarification regarding first degree murder, third degree murder, and manslaughter." **Grant 2**, at 3.

[8] To be consistent with the numerous other decisions recounting the lengthy procedural history of this case, we use the court's docketing date, and not the prisoner mailbox date. **See generally Commonwealth v. Little**, 716 A.2d 1287, 1288 (Pa. Super. 1998) (holding, the "prisoner mailbox rule provides that the date of delivery of the PCRA petition by the defendant to the proper prison authority or to a prison mailbox is considered the date of filing the petition").

misconduct at the first PCRA hearing by creating a fictitious witness. *Id.* at 2. The *Grant 3* Court affirmed because the witness was real. *Id.* at 4-5 (citing to the January 10, 1992 transcript).

Subsequently, on June 5, 1998, Appellant requested the trial transcripts for January 13 and 14, 1992. Appellant's Req. for Trs., 6/5/98. The court granted the request on June 12, 1998, and ordered the transcription. On August 31, 1998, the court sent a letter to Appellant, which advised him that they could not transcribe the testimony for January 13 and 14, 1992, because the stenographer had retired and was unavailable. Ex. 2 to Appellant's Third PCRA Pet., 10/14/98.[9]

On October 14, 1998, Appellant filed his third *pro se* PCRA petition. In his petition, he referenced the court's correspondence regarding the alleged unavailability of trial transcripts for January 13 and 14, 1992. Appellant's Third PCRA Pet., 10/14/98, at 13. Appellant therefore substituted a Pa.R.A.P. 1923 statement in lieu of transcription summarizing the purported trial testimony of John Heris and Richard Young. *Id.* at Ex. B.[10] The PCRA court

---

[9] As explained above, this was partially erroneous because the January 13, 1992 transcript had always existed. Indeed, the hardcopy bears timestamps reflecting receipt of the transcript by this Court on June 19, 1997, and March 2, 1999, among many other dates.

[10] The Commonwealth had previously noted that Heris and Young were called only during the penalty phase of the trial on January 14, 1992, which unfortunately was not transcribed. Commonwealth's Brief, 695 EDA 2007,

denied relief, and this Court affirmed. ***Commonwealth v. Grant***, 188 EDA 1999, at 2-3 (Pa. Super. Sept. 23, 1999) (***Grant 4***), *appeal denied*, 795 A.2d 972 (Pa. Jan. 20, 2000) (table).[11]

*Pro se* Appellant filed his fourth PCRA petition on October 23, 2002, which the PCRA court dismissed.[12] Appellant filed his fifth PCRA petition, *pro se*, on February 23, 2007.[13] *Pro se* Appellant filed his sixth petition on July 28, 2008, and February 4, 2009.[14] On March 19, 2010, the PCRA court

---

2007 WL 3034139, at *4-*5. Our review of the trial transcripts confirms that Heris and Young never testified at trial.

[11] On appeal, Appellant had argued that all prior counsel were ineffective with respect to various issues involving the testimony of two Commonwealth witnesses: Laroy Freeman and Raymond Morris. Appellant also raised an unspecified claim of prosecutorial misconduct, which this Court held lacked merit.

[12] The petition raised claims of prosecutorial misconduct previously raised in his second and third petitions. This Court affirmed, and our Supreme Court denied relief. ***Commonwealth v. Grant***, 3831 EDA 2002, at 1 (Pa. Super. Aug. 28, 2003), *appeal denied*, 844 A.2d 551 (Pa. Feb. 20, 2004).

[13] ***See Commonwealth v. Grant***, 695 EDA 2007, at 3 (Pa. Super. Nov. 14, 2007). This petition is not in the certified record. In pertinent part, he argued his petition was timely because of governmental interference, specifically the Commonwealth's failure to provide him with the complete trial transcripts, including the transcripts for the testimony for Commonwealth witnesses Heris and Young. *Id.* at 3-4. Because the record was incomplete, Appellant claimed all prior counsel were ineffective. *Id.* at 4. The PCRA court dismissed his petition as untimely, this Court affirmed, and the Pennsylvania Supreme Court denied *allocatur*. ***Commonwealth v. Grant***, 951 A.2d 1161 (Pa. June 26, 2008) (table).

[14] ***See Commonwealth v. Grant***, 2364 EDA 2009, at 3 (Pa. Super. Mar. 9, 2010). We note that the certified record only includes twenty-nine pages of

docketed Appellant's seventh *pro se* PCRA petition.[15]  On January 5, 2011, *pro se* Appellant filed his eighth PCRA petition.[16]  Appellant, *pro se*, filed his ninth PCRA petition on December 24, 2012, which the PCRA court dismissed.[17]

the July 28, 2008 petition, which has a table of contents reflecting a length of at least fifty-three pages.  Appellant's Sixth PCRA Pet., 7/28/08 (unpaginated table of contents).  The document docketed on February 4, 2009, is a Pa.R.A.P. 1925(b) statement with a certificate of service date of January 28, 2009.  Stapled to that document is an envelope with a postmark date of July 28, 2008.  We add that the PCRA court had not yet ruled on Appellant's sixth PCRA petition and the record does not reflect a relevant notice of appeal or Rule 1925(b) order.  Our PCRA and appellate courts, however, have consistently construed the February 4, 2009 statement and July 28, 2008 petition as a single combined PCRA petition.  In the "combined" sixth petition, Appellant raised several issues, which included challenges to the testimony of Freeman and Morris.  The PCRA court dismissed the petition as untimely, and this Court affirmed on March 9, 2010.  Appellant did not appeal to the Pennsylvania Supreme Court.

[15]  Appellant claimed newly-discovered evidence and governmental interference with respect to Riley's testimony analyzing the lead used in the bullets.  The PCRA court dismissed the petition on July 15, 2010, and Appellant did not appeal to this Court.

[16] Appellant again disputed the testimony of Freeman and Morris.  He also filed a supplemental PCRA petition on February 14, 2011, which reiterated his arguments about the testimony of Morris.  The PCRA court dismissed the petition, this Court affirmed, and the Pennsylvania Supreme Court denied *allocatur*.  **Commonwealth v. Grant**, 892 EDA 2011 (Pa. Super. Nov. 1, 2011), *appeal denied*, 42 A.3d 291 (Pa. Apr. 5, 2012) (table).

[17] The petition alleged the trial judge erred in charging the jury regarding first-degree murder, **see also Grant 2**, at 3, raised a claim under **Batson v. Kentucky**, 476 U.S. 79 (1986), and argued his due process rights were violated because he was shackled and chained during trial.  This Court affirmed, and the Pennsylvania Supreme Court denied his petition for allowance of appeal.  **Commonwealth v. Grant**, 1475 EDA 2013 (Pa. Super. Nov. 25, 2013), *appeal denied*, 89 A.3d 1283 (Pa. Apr. 15, 2014) (table).

Appellant's tenth *pro se* PCRA petition was filed on October 31, 2014.[18]

## Appellant's Eleventh PCRA Petition

On November 28, 2016, the PCRA court docketed Appellant's eleventh PCRA petition, which claimed his petition is timely because of newly discovered evidence. Specifically, Appellant asserts he did not receive the January 13, 1992 trial transcript until October 6, 2016. Appellant's Eleventh PCRA Pet., 11/28/16, at 2. Appellant argues that he had no knowledge that the January 13, 1992 transcript existed because correspondence from prior counsel advised him that it did not exist.[19] *Id.* at 3-5 (referring to exhibits of correspondence with prior counsel and the court).[20] He also maintains that

_____

[18] Appellant's Tenth PCRA Pet., 10/31/14, at 1. In pertinent part, similar to his third and fifth PCRA petitions, he claimed a ***Brady v. Maryland***, 373 U.S. 83 (1963), violation and Commonwealth interference because the Commonwealth failed to provide him with the trial transcripts for the testimony of witnesses Heris and Young. The PCRA court dismissed the petition, this Court affirmed, and the Pennsylvania Supreme Court refused *allocatur*. ***Commonwealth v. Grant***, 755 EDA 2015 (Pa. Super. Nov. 10, 2015), *appeal denied*, 910 MAL 2015 (Pa. Feb. 24, 2016).

[19] The certified record transmitted to this Court includes hardcopy transcripts for the following dates: December 6, 1991; January 8, 9, 10, and 13, 1992; and December 19, 1994. It does not appear that January 14, 1992—the date the jury deadlocked on Appellant's penalty and the court imposed a mandatory life sentence—was ever transcribed. As noted above, the January 13, 1992 transcript, which contained the jury charge, was used by this Court on direct appeal. ***Grant 1***, at 2.

[20] The exhibits document the intermittent confusion of all parties involved, as they occasionally reference a request for transcripts dated January 10 and 13,

the record established his due diligence in trying to obtain all of the trial transcripts. *Id.* at 4-5.

The PCRA court issued a Pa.R.Crim.P. 907 notice of intent to dismiss, and Appellant filed a response. The PCRA court dismissed the petition on November 15, 2017, and Appellant timely appealed.

On December 6, 2017, the PCRA court ordered Appellant to comply with Pa.R.A.P. 1925(b). The record and docket do not reflect that Appellant filed a Rule 1925(b) statement. The PCRA court's opinion, however, states that Appellant filed a Rule 1925(b) statement on December 11, 2017, and quotes the issues raised in the statement.[21] PCRA Ct. Op., 1/8/18, at 3-4.

Appellant raises the following issues in his brief:

1. Whether the PCRA court erred and denied Appellant's PCRA petition as untimely filed when Appellant established that his after-discovered evidence in the form of two days of missing trial transcripts which Appellant exercised due-diligence in trying to obtain and that Appellant was informed that such transcripts did not exist in his case establishes after-discovered facts and whether his PCRA petition satisfies the after-discovered facts exception, and Appellant met the exception pursuant to the statutory requirement of 42 Pa.C.S. § 9545(b)(1)(ii) and 42 Pa.C.S. § 9545(b)(2).

2. Appellant should be granted a new trial because there [was] after discovered evidence that the leading detective "Terry

---

**1991**, which never existed—the criminal complaint was filed on April 17, 1991, and Appellant was apprehended in Georgia on May 7, 1991.

[21] Because there appears to be a breakdown in the operations of the PCRA court, the Commonwealth does not argue waiver for failure to comply with Rule 1925, and the PCRA court prepared an opinion addressing Appellant's issues, we decline to find waiver.

Lachman" conspired with two jail house informants who [were] working as undercover[s] assisting the state, and one informant after given bits of information was sen[t] back into the same cell with Appellant after a[n] interview with the leading detective, violated Appellant's right to assistance of counsel that's guaranteed by Federal and State constitutions, and both informants received favorable treatment[] or leniency for their assistance, and the prosecuting attorney may have secretly kn[own] about such activity and did nothing to prevent such activity from occurring.

3. Appellant should be granted a new trial because of prosecutorial misconduct and/or the prosecutor committed a ***Brady*** violation when the prosecutor intentionally <u>meant</u> to keep the jury from receiving a newspaper article that was favorable evidence for the defense and would have changed the outcome of the trial, was intended to prejudice and deprive Appellant of a fair trial, among other misconduct.

4. Appellant should be granted a new trial because the trial court abused its discretion and/or committed reversible error which resulted in manifest unreasonableness or prejudice when he imposed t[h]reats and/or sanctions which may have caused a Commonwealth's witness, Appellant's sister[,] to testify falsely and/or perjure[] herself to please the court, whereas such false testimony was prejudicial and denied Appellant a fair trial.

5. Appellant should be granted a new trial because the Commonwealth failed to <u>correct the many false testimony</u> of their Commonwealth's witnesses that they know[] to be false sta[r]ting with their lead detective "Terry Lachman", Leroy Freeman, and Raymond Morris, thereby undermining the outcome in the trial verdict of the jury and the sentence.

6. Appellant should be granted a new trial because the Commonwealth failed to disprove his claims of self-defense, intoxication and diminish[ed] capacity which raises . . . a reasonable possibility when reviewing Appellant's testimony and Dr. Fillinger's testimony whom [sic] conducted the autopsy demonstrates Appellant acted in self-defense and contradicts the false testimony of the Commonwealth's witnesses['] testimony, which undermined the confidence in the outcome of the verdict whereas the evidence of guilt <u>was not</u> so overwhelming as to convict the Appellant of first degree murder.

7. Trial counsel, appellate counsel, and PCRA counsel all was constitutionally ineffective assistance of counsel for filing appeals with a half record, and failure to properly present[], and preserve and raise each of the issues presented in Appellant's PCRA petition, each of the claims establishes arguable merit, and counsels['] failure had no reasonable strategic basis and the errors individually and collectively undermined the confidence in the outcome of the trial and sentencing prejudice[d] Appellant and he should be awarded a new trial.

Appellant's Brief at iii-iv.

In support of his contention that his eleventh PCRA petition is timely, Appellant argues that he fulfilled the timeliness exception at Section 9545(b)(1)(ii). Specifically, he argues that he received new evidence in the form of the January 10 and 13, 1992 trial transcripts that had been allegedly missing since 1993. *Id.* at 1-2. Appellant then discusses the actions he took that purportedly established his due diligence in discovering these transcripts. *Id.* at 2-5.

"Our standard of review of a PCRA court's dismissal of a PCRA petition is limited to examining whether the PCRA court's determination is supported by the evidence of record and free of legal error." **Commonwealth v. Wilson**, 824 A.2d 331, 333 (Pa. Super. 2003) (*en banc*) (citation omitted).

## Timeliness of Appellant's Eleventh PCRA Petition

Our Supreme Court has required this Court to examine whether we have jurisdiction to entertain the underlying PCRA petition. **See Commonwealth v. Fahy**, 737 A.2d 214, 223 (Pa. 1999). A PCRA petition "must normally be filed within one year of the date the judgment becomes final . . . unless one

of the exceptions in § 9545(b)(1)(i)-(iii) applies." ***Commonwealth v. Copenhefer***, 941 A.2d 646, 648 (Pa. 2007) (citations and footnote omitted). A petitioner must plead and prove that:

> (i) the failure to raise the claim previously was the result of interference by government officials with the presentation of the claim in violation of the Constitution or laws of this Commonwealth or the Constitution or laws of the United States;
>
> (ii) the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence; or
>
> (iii) the right asserted is a constitutional right that was recognized by the Supreme Court of the United States or the Supreme Court of Pennsylvania after the time period provided in this section and has been held by that court to apply retroactively.

42 Pa.C.S. § 9545(b)(1)(i)-(iii). "The PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a petition if it is not timely filed. It is the petitioner's burden to allege and prove that one of the [three] timeliness exceptions applies." ***Commonwealth v. Abu–Jamal***, 941 A.2d 1263, 1267–68 (Pa. 2008) (citations omitted).

In ***Commonwealth v. Cox***, 146 A.3d 221 (Pa. 2016), the Pennsylvania Supreme Court highlighted the distinctions between the timeliness exception

- 12 -

of Section 9545(b)(1)(ii), and eligibility for relief based on after-discovered evidence under Section 9543(a)(2)(vi).[22]

> When considering a claim seeking to invoke section 9545(b)(1)(ii), the petitioner must establish only that (1) the facts upon which the claim was predicated were unknown and (2) they could not have been ascertained by the exercise of due diligence. We have unequivocally explained that the exception set forth in subsection (b)(1)(ii) does not require any merits analysis of the underlying claim. Rather, the exception only requires a petitioner to prove that the facts were unknown to him and that he exercised due diligence in discovering those facts.

**Cox**, 146 A.3d at 227 (citations and internal quotation marks omitted);

**accord Commonwealth v. Bennett**, 930 A.2d 1264, 1270 (Pa. 2007).

In **Commonwealth v. Chmiel**, 173 A.3d 617 (Pa. 2017), the Pennsylvania Supreme Court explained the term "fact" as used under subsection (b)(1)(ii):

> This exception requires that the facts upon which such a claim is predicated must not have been known to appellant, nor could they have been ascertained by due diligence. [T]o fall within this exception, the factual predicate of the claim must not be of public record and must not be facts that were previously known but are now presented through a newly discovered source.

**Id.** at 625 (quotation marks and citations omitted). Trial transcripts are in the public domain and do not constitute new sources for previously known

_____

[22] Section 9543(a)(2)(vi) provides as follows: "The unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S. § 9543(a)(2)(vi).

information. *See id.*

Here, Appellant's eleventh PCRA petition is patently untimely, given that his judgment of sentence became final on Monday, December 12, 1994, ninety-one days after the Pennsylvania Supreme Court denied *allocatur*. *See* S. Ct. R. 13.[23] Thus, Appellant had until December 12, 1995, to file his first PCRA petition.[24] Appellant, however, has not pled and proved an exception under subsection (b)(1)(ii), because a transcript—even if it was missing, which it was not—is merely a new source for previously known information. *See Chmiel*, 173 A.3d at 625.

As set forth above, Appellant was present at trial and had first-hand knowledge of the events that transpired on January 10 and 13, 1992. Thus, Appellant has failed to establish the allegedly missing trial transcripts were "unknown facts" that could not have been discovered with due diligence. *See Cox*, 146 A.3d at 227. Moreover, Appellant has known about the "missing" January 13, 1992 transcript since August 31, 1998, and explicitly referenced its alleged unavailability in his third PCRA petition. *See* Appellant's Third PCRA Pet., 10/14/98, at 13. But the transcripts were never "missing". Indeed,

---

[23] We note that Rule 13 has been amended several times, and it appears the version in effect in 1994 provided for a ninety-day period of time.

[24] Appellant's eleventh PCRA petition does not qualify for the grace *proviso*. *See Commonwealth v. Lawson*, 90 A.3d 1, 5 (Pa. Super. 2014) (stating, "Where a petitioner's judgment of sentence became final on or before the effective date of the amendment [to the PCRA], a special grace *proviso* allowed first PCRA petitions to be filed by January 16, 1997").

- 14 -

several of Appellant's prior PCRA petitions have relied on the "missing" transcripts of January 10 and 13, 1992.  *See, e.g.*, *Grant 2*, at 3 (stating counsel was not ineffective regarding jury charge issue); *Grant 3*, at 4-5 (citing to the January 10, 1992 transcript); *see also Grant 1* (holding jury charge issue lacked merit).  In sum, we hold that the PCRA court's determination that it lacked jurisdiction is free from legal error.  *See Wilson*, 824 A.2d at 333; *see also Fahy*, 737 A.2d at 223.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/12/18