J-S07006-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| MALIK BENNETT | : | |
| | : | |
| Appellant | : | No. 217 EDA 2019 |

Appeal from the PCRA Order Entered December 28, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0314291-2003

BEFORE: NICHOLS, J., KING, J., and STRASSBURGER, J.[*]

MEMORANDUM BY NICHOLS, J.:                                    **FILED JULY 9, 2021**

Appellant Malik Bennett appeals from the order denying, after an evidentiary hearing, his second petition under the Post Conviction Relief Act[1] (PCRA).  This case returns to us after we remanded it to have the PCRA court appoint appellate counsel for Appellant.  ***Commonwealth v. Bennett***, 2020 WL 1900083 (Pa. Super. filed April 17, 2020) (unpublished mem.).  On appeal, Appellant argues that the PCRA court erred by not granting a new trial based on after-discovered evidence, specifically an affidavit from Myleek Douthcy. We affirm.

We state the facts as previously set forth by this Court:

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 42 Pa.C.S. §§ 9541-9546.

On February 9, 2003, Appellant and Ramone Randolph [(Victim)] attended a birthday party at Neil's R & R Hideaway (Bar) at 33rd and Reed Streets in South Philadelphia. The party ended in the early morning hours, and, like the other attendees, Appellant and [Victim] left the Bar and lingered outside. At approximately 2:20 a.m., as [Victim] was sitting in the driver's seat of his car, Appellant approached the car and shot six times through the closed driver's side window. Four of the shots hit [Victim], who later died at the Hospital of the University of Pennsylvania.

There was a large number of people who were either standing outside the Bar or sitting in their cars near the Bar when the shooting occurred. Ronnetta Williams was standing in the middle of the street when she heard the gunshots and looked up. She saw Appellant running away from the car with a gun in his hand. She then approached the car and saw that [Victim] had been shot. Another partygoer, Teahonda Wilkerson, was also standing outside the Bar when the shooting occurred. She heard the shots, looked up, and saw Appellant run away from [Victim's] car and run through Stinger Park (Park), which was across the street from the Bar. Tanisha Woods had also attended the party and was sitting in a car outside the Bar with her sister-in-law and heard the shots. Moments after the shooting, she got a call on her cell phone that her brother, Anthony Woods, was chasing Appellant as he fled the scene of the shooting. Ms. Woods ran up the block and saw her brother in pursuit of Appellant. [According to Ms. Woods' police statement, she] saw a gun in Appellant's hand and was afraid that Appellant would shoot her brother, so she yelled to him to stop pursuing Appellant, and he complied.

[At trial, Ms. Woods recanted her police statement that Appellant "was running from [her] brother, but [Appellant] had a gun in his hand." N.T. Trial, 6/28/09, at 170-71. Ms. Woods maintained that she did not see anyone get shot, did not see a gun, but acknowledged that "they were hollering [Appellant's] name, and [she] was running, chasing [her] brother." *Id.* at 171. It appears "they" may be a reference to the other partygoers. *Id.* at 183.]

Appellant was also seen running down the street by two witnesses who had not attended the party. Raymond White, [Victim's] cousin, was standing outside of his mother's house near the Bar and across the street from the Park; he heard the shots coming from the direction of the Bar and saw a male wearing a red, white, and blue jacket and wearing a hat running through the Park

immediately afterwards. [Victim's] nephew, Khayree Gay, was also walking near the Bar and saw a man wearing a baseball cap and jacket running through the Park.

Ballistics evidence showed that six shots were fired, all of which were fired from the same gun. Four of these bullets hit [Victim]; two shots hit [Victim's] upper back, and two hit his left arm. The gun was never recovered.

*Commonwealth v. Bennett*, 1418 EDA 2015, 2016 WL 5001415, *1-2 (Pa. Super. filed July 11, 2016) (unpublished mem.) (citation omitted and formatting altered), *appeal denied*, 166 A.3d 1237 (Pa. 2017).

On June 1, 2009, following a jury trial before [the trial court], Appellant was found guilty of first degree murder, carrying a firearm on a public street, and possessing an instrument of crime (PIC). That same day, Appellant was sentenced to the mandatory term of life in prison.

On June 9, 2009, Appellant filed post-sentence motions, which were denied by the Court of Common Pleas on October 6, 2009. Appellant filed a timely notice of appeal.

*Id.* at *1 (citation omitted and formatting altered). This Court affirmed Appellant's judgment of sentence on April 13, 2011. *Commonwealth v. Bennett*, 29 A.3d 832 (Pa. Super. 2011).

On May 1, 2012, Appellant filed a timely PCRA petition requesting, among other things, reinstatement of his right to file a petition for allowance of appeal *nunc pro tunc*, which the PCRA court granted. *Bennett*, 2016 WL 5001415, at *1. Appellant filed a petition for allowance of appeal, which our Supreme Court denied on June 27, 2013. *Commonwealth v. Bennett*, 70 A.3d 808 (Pa. 2013).

Appellant timely filed a first PCRA petition, which the PCRA court denied on May 14, 2015. *Bennett*, 2016 WL 5001415, at *1; *see Commonwealth v. Turner*, 73 A.3d 1283, 1286 (Pa. Super. 2013) (stating that "when a PCRA petitioner's direct appeal rights are reinstated *nunc pro tunc* in his first PCRA petition, a subsequent PCRA petition will be considered a first PCRA petition for timeliness purposes" (citation omitted)). Appellant timely appealed, this Court affirmed the denial of Appellant's first PCRA petition, and our Supreme Court denied Appellant's petition for allowance of appeal on February 22, 2017.

On March 22, 2017, Appellant, acting *pro se*, filed the instant second PCRA petition claiming newly-discovered evidence, specifically that on February 24, 2017, Appellant received Myleek Douthcy's affidavit. Appellant's PCRA Pet., 3/22/17, at 3. Briefly, Mr. Douthcy's affidavit, which was signed on March 7 (not February 24), stated that Mr. Douthcy was at the Bar when "somebody" was killed and that Appellant was not the shooter. Ex. A. to Appellant's PCRA Pet. Mr. Douthcy further averred that when the police "grabbed [him] a couple of days" after the shooting, he told the police it "was impossible" for Appellant to "kill somebody" because Appellant "was nowhere near the guys that were shooting at each other." *Id.* Appellant asserted that Mr. Douthcy's affidavit established Appellant's innocence and that the Commonwealth committed a *Brady* violation by suppressing Douthcy's statement. Appellant's PCRA Pet. at 3.

The PCRA court appointed James F. Berardinelli, Esq., as PCRA counsel, and he filed an amended PCRA petition reiterating the claims raised in Appellant's *pro se* petition. The PCRA court held an evidentiary hearing on August 13, 2018, at which Mr. Douthcy testified that he had smoked marijuana on the night of the shooting and that he knew Victim by his nickname "Mone."[2] N.T. PCRA Hr'g, 8/13/18, at 16, 18. **Cf.** Ex. A. to Appellant's PCRA Pet. Mr. Douthcy also testified that the police questioned him either one or two days after the shooting. N.T. PCRA Hr'g at 9, 34-35. **Cf.** Ex. A. to Appellant's PCRA Pet.

Mr. Douthcy testified that he told the police that Appellant was not the shooter, N.T. PCRA Hr'g at 26, for the following reason:

> [Attorney Berardinelli]. Can you explain where you were at the time [Victim] was shot?
>
> [Mr. Douthcy]. I was standing outside of the bar on the side by the telephone booth, and where [Appellant] was at – [Appellant] was in the street in his car and it was parked. And I was watching out, and I heard the shots. And I heard [Appellant] say, [g]et down. [Appellant] was like a few feet over from me. That's when I just got down and everyone started running off.

**Id.** at 6-7; **see also id.** at 9-11. Mr. Douthcy testified that when he told the police that Appellant was not the shooter, they "did not write anything down or anything." **Id.** at 10. Mr. Douthcy also explained that because he was

---

[2] Although the cover page and header of the notes of testimony state the date of the hearing as August 12, 2018, the record reflects the hearing occurred on Monday, August 13, 2018.

living in Williamsport at that time and because he heard "[t]hrough the streets" that Appellant was arrested but released, Mr. Douthcy did not contact Appellant or Appellant's counsel about his testimony. *Id.* at 11.

Subsequently, Mr. Douthcy encountered Appellant in prison in 2014 or 2015:

> And I said to [Appellant], "What are you here for?" [Appellant] let me know that he was incarcerated for the homicide for that day. And I was like, "How?" Because my understanding was that they said you wasn't -- it wasn't you that did it and I know that he wasn't there. I didn't see you do anything, I just heard you say, get down, and everything.

*Id.* at 11-12.

On December 28, 2018, the PCRA court denied Appellant's PCRA petition. Order, 12/28/18. Appellant timely filed a *pro se* notice of appeal and a timely *pro se* court-ordered Pa.R.A.P. 1925(b) statement. On May 13, 2019, the PCRA court filed a Rule 1925(a) opinion, which held that Appellant's second PCRA petition properly invoked the newly-discovered facts exception to the PCRA's time bar. PCRA Ct. Op., 5/13/19, at 3 & n.18 (citing 42 Pa.C.S. § 9545(b)(1)(ii)). The PCRA court then explained its reasoning for denying relief on the merits of the after-discovered evidence claim, which we set forth below.

Meanwhile, Attorney Berardinelli filed a motion to withdraw in this Court, which asserted that he had not been retained for appeal. This Court denied the motion to withdraw without prejudice to have Attorney Berardinelli refile

his motion in the PCRA court. Attorney Berardinelli filed a motion to withdraw with the PCRA court, which granted it. Order, 4/25/19.

On April 17, 2020, this Court remanded to the PCRA court to have it appoint appellate counsel for Appellant. **Bennett**, 2020 WL 1900083 at *6. On October 9, 2020, the PCRA court appointed Gina A. Amoriello, Esq., as Appellant's PCRA appellate counsel, and Attorney Amoriello filed a court-ordered Rule 1925(b) statement on October 30, 2020. The PCRA court filed a Rule 1925(a) opinion on January 15, 2021, which was a copy of its prior May 13, 2019 Rule 1925(a) opinion.

Appellant raises the following issue on appeal:

Did the [PCRA] court err in denying post-conviction relief based on newly discovered evidence, after an evidentiary hearing wherein Myleek [Douthcy] testified that he had provided exculpatory information to the police within days of the homicide and same was never turned over to the defense?

Appellant's Brief at 4.

Appellant argues that the PCRA evidentiary hearing clearly established that he is entitled to relief. **Id.** at 10. Appellant summarizes Mr. Douthcy's testimony that Mr. Douthcy was present when the Victim was killed, and that Appellant was not the shooter. **Id.** at 10-11. Appellant also points out that Mr. Douthcy testified that he told the police that Appellant was not the shooter, but the police wrote "nothing down." **Id.** In Appellant's view, the after-discovered exculpatory evidence, in conjunction with Ms. Woods' recantation at trial, were sufficient for a grant of PCRA relief. **Id.** at 12.

Our review of the denial of a PCRA petition is limited to the examination of "whether the PCRA court's determination is supported by the record and free of legal error." *Commonwealth v. Miller*, 102 A.3d 988, 992 (Pa. Super. 2014) (citation and quotation marks omitted). Further, the "scope of review is limited to the findings of the PCRA court and the evidence of record, viewed in the light most favorable to the prevailing party at the trial level." *Id.* (citation and quotation marks omitted). "A PCRA court passes on witness credibility at PCRA hearings, and its credibility determinations should be provided great deference by reviewing courts." *Commonwealth v. Johnson*, 966 A.2d 523, 539 (Pa. 2009) (citations omitted). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." *Commonwealth v. Lawson*, 90 A.3d 1, 4 (Pa. Super. 2014) (citations omitted). We review "the PCRA court's legal conclusions *de novo*." *See Miller*, 102 A.3d at 992 (citation omitted).

It is well settled that an after-discovered evidence claim requires a petitioner to establish that (1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict if a new trial were granted. *Commonwealth v. Cox*, 146 A.3d 221, 228 (Pa. 2016). "The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be

warranted." ***Commonwealth v. Padillas***, 997 A.2d 356, 363 (Pa. Super. 2010) (citations omitted).

In determining "whether the alleged after-discovered evidence is of such nature and character that it would likely compel a different verdict if a new trial is granted. . . . a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." ***Id.*** at 365 (citations omitted). If a PCRA court finds that the after-discovered evidence is not credible, then it follows that such evidence would not compel a different outcome if a new trial was granted. ***See Commonwealth v. Small***, 189 A.3d 961, 977 (Pa. 2018).

Here, the PCRA court denied relief because it found Mr. Douthcy's testimony was not credible and would not have compelled a different verdict at trial. ***See*** PCRA Ct. Op., 5/13/19, at 7-9. The PCRA court explained that Mr. Douthcy's testimony was not credible given the inconsistencies between his testimony and his affidavit. ***See id.*** at 8-9. For example, the PCRA court noted that Mr. Douthcy knew Victim, but merely identified Victim as "someone who was killed" in his affidavit. ***See id.*** at 8. The PCRA court also pointed out that Mr. Douthcy averred in his affidavit that he spoke with the police a couple of days after the shooting, but at the evidentiary hearing, he testified

he spoke with the police one day after the shooting.[3]  ***See id.***  Finally, the PCRA court reasoned that Mr. Douthcy was not credible because he was under the influence of marijuana on the night of the shooting and was testifying about an event ten years after the fact.  ***See id.***

The PCRA court reasoned that even if it found Mr. Douthcy's PCRA hearing testimony credible, it would not have compelled a different verdict. ***See id.*** at 7.  The PCRA court noted that Mr. Douthcy's testimony confirmed that Appellant "was at the scene of the crime" and that Mr. Douthcy testified that he only heard, but did not actually see, Appellant say "get down."  ***See id.***  Because Mr. Douthcy was on the ground, the PCRA court reasoned that Mr. Douthcy did not actually see who fired the gun.  ***See id.***  The PCRA court also observed that the physical evidence and trial testimony established that Appellant alone shot Victim, which contradicted Mr. Douthcy's PCRA testimony that multiple shooters existed.  ***See id.*** at 7; ***see also id.*** at 3-5 (summarizing testimony of several trial witnesses identifying Appellant as the sole shooter).

Following our review, we are bound by the PCRA court's finding that Mr. Douthcy was not credible.  ***See Johnson***, 966 A.2d at 539.  We also agree with the PCRA court that the record as a whole and the law support its conclusion that Appellant failed to establish by a preponderance of the

---

[3] As we noted above, Mr. Douthcy testified that he spoke with police either one, two, or a couple of days after the shooting.  ***See*** N.T. PCRA Hr'g at 9, 34-35.

evidence that Mr. Douthcy's testimony would likely compel a different verdict at trial. *See id.* at 542; *accord Small*, 189 A.3d at 977; *Cox*, 146 A.3d at 228; *Padillas*, 997 A.2d at 363, 365 (noting a court must consider "the overall strength of the evidence supporting the conviction"). Because the PCRA court's conclusion "is supported by the record and free of legal error," we affirm. *See Miller*, 102 A.3d at 992; *Lawson*, 90 A.3d at 4.

Order affirmed.

Judge Strassburger did not participate in the consideration or decision of this case.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/9/2021