J-S02011-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :            PENNSYLVANIA
                                :
            v.                      :
                                :
                                :
JOSHUA HOLMES                   :
                                :
            Appellant            :      No. 497 EDA 2023

Appeal from the PCRA Order Entered February 22, 2023
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0003018-2010

BEFORE:    LAZARUS, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, P.J.:          **FILED AUGUST 1, 2024**

Joshua Holmes appeals from the order, entered in the Court of Common Pleas of Philadelphia County, denying his petition filed pursuant to the Post Conviction Relief Act (PCRA), 42 Pa.C.S.A. §§ 9541-9546. In addition, Holmes' counsel, George S. Yacoubian, Jr., Esquire, filed a petition to withdraw and an ***Anders*** brief.[1] After review, we grant counsel's petition to withdraw and affirm the order of the PCRA court.

---

[*] Former Justice specially assigned to the Superior Court.

[1] A brief filed pursuant to ***Anders v. California***, 386 U.S. 738 (1967), is proper where counsel seeks to withdraw his or her representation in a direct appeal. A ***Turner/Finley*** no-merit letter is the appropriate filing in an application to withdraw on collateral review. ***See Commonwealth v. Turner***, 544 A.2d 927 (Pa. 1988); ***Commonwealth v. Finley***, 550 A.2d 213 (Pa. Super. 1998) (en banc). However, "[b]ecause an ***Anders*** brief provides greater protection to a defendant, this Court may accept an ***Anders*** brief in lieu of a ***Turner/Finley*** letter." ***Commonwealth v. Widgins***, 29 A.3d 816,
*(Footnote Continued Next Page)*

The PCRA court set forth the relevant facts of this matter as follows:

> [Holmes] was convicted of third-degree murder in the death of Donovan Raheem Weary, also known as "Double." [Holmes'] brother, Joseph Holmes [(Joseph)], (collectively "Holmes brothers") was convicted of first-degree murder of Weary. [] Weary was a street-level drug dealer [who] used Joseph [] as one of his suppliers. Joseph "fronted" Weary crack cocaine once or twice a week in January and February of 2008, which Weary sold in the area of 7000 Forrest Avenue and 7100 Ogontz Avenue. On February 14, 2008, Weary called Joseph [] at his home and they arranged to meet regarding money that Weary owed Joseph for drugs that Joseph had advanced to Weary. Joseph's girlfriend, Niamah Fisher [] and [] Holmes were present when Joseph received the call. Joseph then told Holmes to go down to the basement to get a gun. After Holmes came back up, the three left the Holmes brothers' home. Fisher walked north on Forrest Avenue toward Homer Street and the Holmes brothers walked south on Forrest Avenue toward Middleton Street. After joining up with Weary, Holmes and Joseph walked down an alley that runs parallel to Forrest Avenue, between Forrest and Ogontz Avenues

817 n.2 (Pa. Super. 2011) (citation omitted).

On March 22, 2024, after review of counsel's first **Anders** brief, this Court entered an order directing counsel to comply with the substantive requirements of **Turner/Finley**, and provide an explanation as to why counsel believed Holmes' issues were meritless. **See** Judgment Order, 3/22/24. Although counsel's second filing, received on March 26, 2024, is once again titled as an "**Anders**" brief, he has substantially complied with this Court's order and the **Turner/Finley** requirements. Upon review, counsel has satisfied the requirements of **Turner/Finley**. Attorney Yacoubian (1) set forth the issues Holmes wished to raise; (2) stated he has conducted a thorough review of the record and applicable law; (3) determined there are no non-frivolous claims Holmes can raise; and (4) explained why Holmes' claims lack merit. Attorney Yacoubian has notified Holmes by letter of his intention to seek permission to withdraw from representation, and Holmes' rights in lieu of representation. **See** Application to Withdraw, 7/17/23; Letter, 11/19/23, filed 3/25/24; Letter, 7/16/23, filed 3/26/24. **See Widgins**, **supra**. **See also Commonwealth v. Daniels**, 947 A.2d 795, 798 (Pa. Super. 2008) (stating **Anders** brief which complies substantially with the requirements of **Turner/Finley** is sufficient to permit withdrawal of counsel); **Commonwealth v. Wrecks**, 931 A.2d 717, 721 (Pa. Super. 2007) (same).

and between Middleton and Homer Streets. Fisher saw the three men walking towards Homer Street and then saw Joseph and Weary exchange something. She then saw Joseph push Weary up against a garage and shoot him twice in the head. Joseph saw Fisher on Homer Street and followed her home. Holmes arrived at Fisher's home while Joseph was talking to Fisher and held her arms while Joseph told Fisher that she should be quiet or she would be next.

The crime remained unsolved until November 2009, when Fisher, believing that she was about to be replaced in Joseph's affections, called the police and told them about the murder and gave the police a signed statement with details of the murder. Fisher later reconciled with Joseph. At trial, she repudiated her statement, which was then admitted into evidence. Based on Fisher's statement[,] the police located another witness, Raymond Johnson, who gave a statement indicating that[,] after hearing shots[,] he saw Holmes and Joseph running from the crime scene. Johnson also repudiated his statement at trial and it was also admitted into evidence.

On April 29, 2009, the police executed a search warrant of [the] Holmes residence and found two firearms in the basement that were similar to the firearm used in the murder. Neither firearm was the murder weapon.

PCRA Court Opinion, 6/6/23, at 1-2 (citations omitted).

At trial, the Commonwealth established that Holmes heard that Joseph was going to meet with the victim, went to the basement to get a gun at Joseph's direction, accompanied Joseph to meet with the victim, was with Joseph when he shot the victim twice in the head, fled the crime scene, and met up with Joseph and helped to threaten Fisher, the only witness to the crime. Trial Court Opinion, 1/27/12, at 4. The medical examiner testified that the victim died of two gunshot wounds to his head. The gun was in contact with the victim's head for one shot, and the other shot was fired at close range. *Id.* at 3.

On June 13, 2011, a jury convicted Holmes of third-degree murder.[2] The trial court sentenced Holmes to serve a term of 15 to 35 years' imprisonment. On direct appeal, this Court affirmed. *See Commonwealth v. Holmes*, 2704 EDA 2011 (Pa. Super. filed Feb. 2, 2013) (unpublished memorandum decision). Holmes filed a petition for allowance of appeal, which the Pennsylvania Supreme Court denied on August 19, 2013. *See Commonwealth v. Holmes*, 74 A.3d 125 (Pa. 2013) (Table). On June 9, 2014, Holmes filed a *pro se* PCRA petition. On July 6, 2019, Attorney Yacoubian filed an amended PCRA petition; he filed a second amended PCRA petition on June 29, 2021. Both petitions alleged after-discovered evidence. In his PCRA petition, "[Holmes] submitted an affidavit from Brandon Jackson, who indicated that he saw [Holmes] within minutes of the shooting in [Holmes'] home, and he neither saw [Holmes] with a firearm nor observed [Holmes] acting nervous or agitated." PCRA Opinion, 6/6/23, at 3.

On February 22, 2023, the PCRA court dismissed Holmes' petition. This timely appeal and motion to withdraw followed. Counsel has identified the following issues for our review: (1) whether the PCRA court erred in denying an evidentiary hearing on Holmes' after-discovered evidence claim involving

---

[2] Holmes' co-defendant, his brother Joseph, was found guilty of murder of the first degree, and possession of an instrument of crime (PIC). Joseph also filed an appeal from his judgment of sentence, and this Court remanded for an evidentiary hearing after which the trial court denied a new trial. On appeal, this Court affirmed. *Commonwealth v. Holmes*, 2082 EDA 2013 (Pa. Super. filed June 16, 2014) (unpublished memorandum decision). The Pennsylvania Supreme Court denied allowance of appeal. *Commonwealth v. Holmes*, 316 EAL 2014, (Pa. filed Oct. 8 2014).

Brandon Jackson; and (2) whether the PCRA court erred in denying Holmes' after-discovered evidence claims involving Raymond Johnson and Naimah Fisher, both of whom recanted their trial testimony.

In reviewing an order denying PCRA relief, our well-settled standard of review is "whether the determination of the PCRA court is supported by the evidence of record and is free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Barndt**, 74 A.3d 185, 191-92 (Pa. Super. 2013) (internal quotations and citations omitted).

Under the PCRA, a petitioner is eligible for relief if he can plead and prove by a preponderance of the evidence that his conviction resulted from "[t]he unavailability at the time of trial of exculpatory evidence that has subsequently become available and would have changed the outcome of the trial if it had been introduced." 42 Pa.C.S.A. § 9543(a)(2)(vi). An after-discovered evidence claim requires a petitioner to establish that "(1) the evidence has been discovered after trial and it could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict[ ]" if a new trial were granted. **Commonwealth v. Cox**, 146 A.3d 221, 228 (citation and quotation marks omitted). "The test is conjunctive; the defendant must show by a preponderance of the evidence that each of these factors has been met in order for a new trial to be warranted." **Commonwealth v. Padillas**, 997

- 5 -

A.2d 356, 363 (Pa. Super. 2010) (citations omitted). We have stated, prior to granting a new trial based on after-discovered evidence, "a court must assess whether the alleged after-discovered evidence is of such a nature and character that it would likely compel a different verdict if a new trial is granted." *Id.* at 365. In making this assessment, "a court should consider the integrity of the alleged after-discovered evidence, the motive of those offering the evidence, and the overall strength of the evidence supporting the conviction." *Id.* (citations omitted).

Further, it is well settled that

[t]here is no absolute right to an evidentiary hearing on a PCRA petition, and if the PCRA court can determine from the record that no genuine issues of material fact exist, then a hearing is not necessary. To obtain reversal of a PCRA court's decision to dismiss a petition without a hearing, an appellant must show that he raised a genuine issue of fact which, if resolved in his favor, would have entitled him to relief, or that the court otherwise abused its discretion in denying a hearing.

*Commonwealth v. Maddrey*, 205 A.3d 323, 328 (Pa. Super. 2019) (citations and quotation marks omitted).

After our review, we conclude that no relief is due. Jackson's signed statement, which indicated that he was with Holmes minutes after the shooting and that Holmes did not appear agitated and did not have a firearm, does not constitute after-discovered evidence. Jackson's statement clearly was not discovered after trial. In his statement, Jackson asserts he spoke with Holmes shortly after the shooting. Because Holmes was present for and allegedly took part in this interaction, he cannot now claim that he was

unaware of Jackson's possible testimony. *See Cox*, *supra*. Further, this evidence would be "merely corroborative or cumulative" of other alibi evidence Holmes introduced at trial. Holmes' brother, his brother's girlfriend, and his mother testified that they were with Holmes at the time of the shooting and that he did not have a firearm. *See* N.T. Jury Trial, 6/10/2011, at 25-26, 39-42, 55-58. Jackson's possible alibi testimony merely supports other similar alibi evidence presented at trial. *See Cox*, *supra*; *Padillas*, *supra*.

Next, Holmes alleges after-discovered evidence in the form of recantations of Fisher and Johnson and the pattern and practice of former Philadelphia Police Detective James Pitts in the course of obtaining statements from witnesses. Holmes refers to various newspaper articles and legal documents with respect to Detective Pitts.[3]

On November 11, 2009, Fisher gave a statement to Detective Robert Hesser that Holmes shot and killed the victim. Because Fisher was becoming agitated with Detective Hesser's questioning, Detective Pitts and Detective Glenn Jenkins continued the interview. Fisher signed the written statement and gave police letters from Joseph that showed his efforts to control and intimidate her. At trial, the letters were read to the jury and Fisher acknowledged that Holmes sent those letters to her. *See* N.T. Jury Trial, 6/8/11, at 8-12.

---

[3] *See Commonwealth v. Thorpe*, No. CP-51-CR-0011433-2008 (Phila. Cty. filed Nov. 3, 2017) (PCRA court granted relief after finding that Detective Pitts had engaged in coercive conduct when interviewing witnesses in that case and other cases).

One month later, Fisher contacted counsel for Holmes and reported that she only gave her statement because she was angry with Joseph for cheating on her. Her recantation statement of December 23, 2009, however, made no reference to improper conduct by Detective Pitts. It was only at the preliminary hearing, in March of 2010, that Fisher claimed her statement was coerced by Detective Pitts.

As an initial matter, Fisher's recantation statement is not after-discovered evidence as it was made prior to trial. Clearly, this evidence could have been obtained prior to the conclusion of trial by the exercise of reasonable diligence. *See Padillas*, *supra*. Further, even though Detective Pitts took the statement from Fisher, Fisher first reported the shooting to Detective Hesser. Moreover, at trial, the Commonwealth read into evidence the threatening letters from co-defendant Joseph to Fisher and played recorded phone calls from Joseph to Fisher where he attempted to discourage Fisher from testifying at trial. Another Holmes brother, Abraham Holmes, admitted at trial that Joseph told him to prevent Fisher from attending the preliminary hearing. *See* N.T. Jury Trial, 6/10/2011, at 19-22.

We also point out that Detective Pitts' misconduct in other cases does not prove he coerced Fisher to falsely implicate Holmes in this case. To the contrary, as stated above, the evidence presented at trial established that co-defendant Joseph intimidated Fisher into recanting her statement and illustrated his hold over Fisher. As required by the holding in *Padillas*, the PCRA court considered the integrity of the alleged after discovered evidence,

the motive of those offering said evidence, and the overall strength of the evidence supporting the underlying conviction. The PCRA court determined, and we agree, that it is more likely Fisher recanted her testimony out of fear of Joseph rather than because her statement was coerced by Detective Pitts.[4]

With respect to Johnson's recantation statement, we find this, too, does not qualify as after-discovered evidence. At trial, Johnson testified that he did not make the statements attributed to him. Holmes cannot claim that Johnson's recantation statement, which was consistent with his testimony at trial, is after-discovered evidence.

We conclude that the PCRA court's decision is supported by the evidence of record and free from legal error. **_See Barndt_**, **_supra_**. Accordingly, Holmes' claims merit no relief. We affirm the PCRA court's order and grant counsel's application to withdraw.

Order affirmed. Application to withdraw as counsel granted.

Judgment Entered.

_Benjamin D. Kohler_

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/01/2024

---

[4] We note that Holmes does not include in his petition any statement made by Fisher with respect to alleged coercion by Detective Pitts.