J-S31019-25

2025 PA Super 239

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| JERMAINE WILLIAMS | : | |
| | : | |
| Appellant | : | No. 3301 EDA 2024 |

Appeal from the PCRA Order Entered December 6, 2024
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CP-0403571-1996

BEFORE:  PANELLA, P.J.E., DUBOW, J., and NICHOLS, J.

OPINION BY DUBOW, J.:                    **FILED OCTOBER 23, 2025**

Appellant, Jermaine Williams, appeals from the December 6, 2024 order entered in the Philadelphia County Court of Common Pleas, dismissing his fifth petition filed pursuant to the Post-Conviction Relief Act ("PCRA").[1]  Appellant argues that the court erred in denying relief on his claim of after-discovered evidence of police misconduct.  After careful review, we affirm.

On October 20, 1995, Appellant fatally shot Kenneth Billie ("Victim") in Philadelphia.  This Court previously summarized the facts:

> After an argument, Appellant told the victim to get his gun because Appellant was going to come after him.  A short time later, Appellant approached the victim outside of the victim's girlfriend's house.  After a few words were exchanged, Appellant pulled a handgun from under his shirt and fired once into the victim's chest.  The victim then turned to run away, but collapsed to the ground while Appellant fired twice more.  The victim died a short time later.

_____

[1] 42 Pa.C.S. §§ 9541-46.

*Commonwealth v. Williams*, 3087 EDA 2008, at 1-2 (Pa. Super. filed Oct. 27, 2009) (unpublished decision) (citation omitted).

During the April 1997 jury trial, the Commonwealth presented five eyewitnesses, who testified to the above facts, and several also stated that Victim approached Appellant unarmed with his arms extended and hands open. Law enforcement, including Officer Linwood Norman, Officer Lamont Fox, and Detective Dennis Dusak, testified regarding their investigation.

Appellant testified in his own defense. He did not dispute shooting Victim with a .22 caliber gun; rather, he claimed that he acted in self-defense after Victim brandished a gun, which the defense argued was the 9mm gun found at the crime scene. Appellant's defense at trial, as well as his past and current PCRA petitions, revolved around this gun and law enforcement's investigation of it.

In relevant part, the investigators found the 9mm gun on a sidewalk approximately 24 feet from where Victim collapsed. N.T., 4/17/1997, at 166. They discovered it as they were concluding their investigation of the crime scene, only after permitting an individual to move a vehicle. *Id.* at 133-34. The Commonwealth's theory was that the gun was unrelated to the shooting, with Officer Norman suggesting that the 9mm gun fell out of the vehicle's wheel well when the vehicle drove away, noting that drug dealers often hide guns in wheel wells. N.T., 4/24/1997, at 144; N.T., 4/17/1997, at 51. Appellant's counsel argued that Victim dropped the gun after being shot and it slid across the street. N.T., 4/23/1997, at 268.

Officer Fox of the Mobile Crime Detection Unit testified that after photographing and measuring the weapon, he picked it up with latex gloves and did not see any identifiable fingerprints. N.T., 4/17/1997, at 137. The officer stated that he subsequently utilized a "macro light" and found no usable fingerprints but did not make a record of that finding. *Id.* at 155-56.

Appellant's counsel cross-examined the Commonwealth's witnesses regarding their late recovery of the 9mm gun, their failure to document the "macro-light" testing or perform other fingerprint analysis on the gun, and the absence of information relating to the gun in their police reports.

After a nine-day trial, the jury convicted Appellant of Murder in the First Degree and Possession of an Instrument of Crime ("PIC"). The trial court imposed a sentence of life in prison without parole for Murder and a concurrent sentence of 2.5 to 5 years of imprisonment for PIC.

Following reinstatement of his appellate rights *nunc pro tunc*, this Court affirmed the judgment of sentence in August 2000, and the Supreme Court denied allowance of appeal on January 8, 2001.[2] Thus, Appellant's judgment of sentence became final on April 8, 2001.[3]

Appellant filed four unsuccessful PCRA petitions. Relevantly, in both his 2007 and 2015 petitions, Appellant proffered documents from police

_____

[2] ***Commonwealth v. Williams***, 764 A.2d 1131 (Pa. Super. 2000) (unpublished decision), *appeal denied*, 766 A.2d 1248 (Pa. 2001).

[3] ***Commonwealth v. Williams***, 2017 WL 4081276, at *1 n.1 (Pa. Super. filed Sept. 15, 2017) (unpublished decision).

departments, which he claimed refuted Officer Fox's testimony regarding "macro-light" testing for fingerprints; he also referenced a federal grand jury's indictment of Officer Fox for perjury. This Court concluded that neither petition satisfied the newly discovered fact exception to the PCRA's time bar, as Appellant failed to demonstrate due diligence. **Williams**, 2017 WL 4081276, at *1; **Commonwealth v. Williams**, 3087 EDA 2008, at 7 (Pa. Super. filed Oct. 27, 2009) (unpublished decision).

On February 26, 2020, Appellant filed the instant PCRA petition asserting that he met the newly discovered fact timeliness exception to the PCRA's jurisdictional time-bar based upon the District Attorney's Office's April 24, 2019 letter related to Appellant's federal *habeas* proceeding disclosing a federal grand jury indictment of Officer Norman. Appellant claimed that following this disclosure, he researched the other investigators and discovered additional misconduct. Appellant filed a counseled, amended petition on July 23, 2023.

On December 6, 2024, after providing the requisite notice pursuant to Pa.R.Crim.P. 907, the PCRA court dismissed Appellant's petition without a hearing. The court concluded that Appellant satisfied the PCRA's jurisdictional time-bar, as Appellant "could not have independently discovered [the relevant] facts earlier than April 24, 2019[.]" PCRA Ct. Op., 1/31/25, at 6. Nevertheless, the court held that Appellant was not entitled to relief under the PCRA's after-discovered evidence provision, 42 Pa.C.S. § 9543(a)(2)(vi). Specifically, the court concluded that Appellant could not demonstrate that he

could have used the evidence for any purpose other than to impeach the witnesses' testimony nor could he prove that the new information would have resulted in a different verdict.

Appellant filed a notice of appeal on December 7, 2024. Appellant and the PCRA court complied with Pa.R.A.P. 1925.

Appellant presents the following question on appeal:

> Did the PCRA Court err in finding that the Appellant had not established either a sufficient nexus between the newly discovered evidence and the instant case or sufficient prejudice to the Appellant?

Appellant's Br. at 6.

This Court reviews the dismissal of a PCRA petition to determine whether the record supports the court's determination and whether its order is otherwise free of legal error. *See Commonwealth v. Fears*, 86 A.3d 795, 803 (Pa. 2014). While we grant great deference to the PCRA court's findings of fact, if supported by the record, we review the court's legal conclusions *de novo*. *See Commonwealth v. Smith*, 167 A.3d 782, 787 (Pa. Super. 2017); *Commonwealth v. Sandusky*, 324 A.3d 551, 564 (Pa. Super. 2024). "We view the findings of the PCRA court and the evidence of record in a light most favorable to the prevailing party." *Sandusky*, 324 A.3d at 564 (citation omitted).

Before addressing the merits of Appellant's claim, we reiterate that "the PCRA's timeliness requirements are jurisdictional in nature and must be strictly construed; courts may not address the merits of the issues raised in a

petition if it is not timely filed." ***Commonwealth v. Walters***, 135 A.3d 589, 591 (Pa. Super. 2016) (citations omitted).

Appellant does not dispute that his 2020 PCRA petition is facially untimely as he filed it almost 19 years after his sentence became final. We agree with the PCRA court, however, that Appellant satisfied the newly-discovered facts exception to the PCRA's jurisdictional time bar, which requires proof that "the facts upon which the claim is predicated were unknown to the petitioner and could not have been ascertained by the exercise of due diligence" and that Appellant filed his petition "within one year of the date the claim could have been presented." 42 Pa.C.S § 9545(b). Specifically, Appellant filed his claim within one year of the District Attorney's disclosure regarding Officer Norman, which led to his subsequent research relating to other officers. PCRA Ct. Op. at 6. Moreover, we agree with the PCRA court that he acted with the requisite diligence in pursuing this information as he was not required to investigate the officers' misconduct until being alerted to it in his federal *habeas* proceeding. ***Id.***

Accordingly, we turn to the merits of Appellant's claim that the PCRA court erred by denying relief. "To be eligible for relief under [the PCRA], the petitioner must plead and prove by a preponderance of the evidence" that their conviction resulted from one of seven enumerated circumstances including after-discovered evidence. 42 Pa.C.S. § 9543(a)(2)(vi).

To prove an after-discovered evidence claim, a petitioner must show each of the following: "(1) the evidence has been discovered after trial and it

could not have been obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict." *Commonwealth v. Cox*, 146 A.3d 221, 228 (Pa. 2016) (citation omitted).

As noted, Appellant's after-discovered evidence claim related to his alleged discovery "that key officers," specifically Detective Dusak and Officers Norman and Fox, "committed serious misconduct during the same period of time that they investigated" his case.[4] Appellant's Br. at 9-10. He argues that the PCRA court erred in failing to find a sufficient "nexus between the after-discovered evidence and his 1997 trial." *Id.* at 27.

Regarding Detective Dusak, Appellant observes that Detective Dusak was involved in 1991 and 1995 murder investigations leading to convictions, which were later overturned following the disclosure that detectives had coerced false confessions or witness testimony, withheld exculpatory evidence, and failed to document or disclose other suspects. *Id.* at 13-14.[5] Appellant attempts to connect this misconduct with his case, emphasizing that Detective Dusak was the lead investigator who interviewed "all the primary witnesses." Appellant's Br. at 27. He highlights an alleged discrepancy in the

---

[4] Appellant also lodges allegations related to Detective Thomas Baker, but cites information related to Detective David Baker, who was not involved in Appellant's case. Appellant's Br. at 16-19. Thus, we decline to address these claims.

[5] The Commonwealth acknowledges Detective Dusak's involvement "in two cases that led to wrongful convictions." Commonwealth's Br. at 12.

record relating to eyewitness Charles Patton, suggesting that the officers interviewed Mr. Patton on both October 20 and 24, 1995, but the record includes only an October 20 statement. *Id.* at 27-28. He claims that this is another instance of Philadelphia Homicide detectives' "[i]ntentional failure to document information that the detectives do not want documented." *Id.* at 28. Notably, Appellant does not present an affidavit from Mr. Patton or any of the other eyewitnesses alleging suppressed information or coerced testimony.

Next, Appellant addresses the disclosure of police misconduct pertaining to Officers Norman and Fox, which the Commonwealth provided to Appellant. Appellant's Br. at 11-12, 15; Commonwealth's Br. at 12. Appellant emphasizes that the disclosure alleged that Officer Norman and other "officers routinely beat and robbed money and drugs from suspects" and that the District Attorneys' Office subsequently decided not to "prosecute any (drug) cases involving Officer Norman or any of his codefendants." Appellant's Br. at 12. Additionally, Appellant reiterates that a federal grand jury indicted Officer Fox for "making false declarations before the grand jury." *Id.* at 15. Appellant admits, however, that both officers obtained acquittals of the charges. *Id.* at 11 n.1, 15

Appellant contends that he would have used the evidence of prior misconduct to "undermine the integrity of the entire case as well as call into question the validity of the prosecution itself in that it relied so heavily on these officers['] investigation and testimony." Appellant's Br. at 26-27

(citation omitted). He proffers that if the jury had been aware of the alleged misconduct "it is more likely than not that they would have concluded that the police investigation was inherently unreliable" such that it would not support a "finding of guilty beyond a reasonable doubt." *Id.* at 10.

In so doing, he emphasizes the centrality of the 9mm gun to his self-defense claim. *Id.* at 29-39. He faults the detectives and specifically Detective Dusak, as lead investigator, for failing to obtain fingerprint testing on the gun and criticizes the Commonwealth for failing to correct Officer Fox's testimony regarding "macro-light" testing.[6] *Id.* at 32-37. Appellant maintains that "[b]ecause there was no investigation for fingerprints, the defense was unable to establish that someone else - the victim- held the (9mm) gun last. The lack of testing prejudicially handicapped the defense in their effort to establish self-defense." *Id.* at 39.

After careful review, we conclude that the PCRA court did not err in finding that Appellant failed to demonstrate a right to relief. PCRA Ct. Op. at 9-12. Rather, the PCRA court aptly contrasted the instant case with *Commonwealth v. R. Williams*, 215 A.3d 1019, 1026 (Pa. Super. 2019), in which this Court granted a new trial based upon after-discovered evidence of police misconduct. In *R. Williams*, the Commonwealth conceded the need for a new trial following the disclosure of "serious allegations" of police

_____

[6] Appellant asserts that "[t]here is no evidence of record that 'macro light' testing even exists, much less is a scientific method routinely accepted or used to identify latent fingerprints." Appellant's Br. at 37.

misconduct involving the sole witness in the case — the discredited officer. *Id.* at 1022. Moreover, the petitioner proffered an affidavit from another officer who contradicted the discredited officer's testimony at trial. *Id.* at 1025.

In contrast to *R. Williams*, while the Commonwealth acknowledged the alleged misconduct of Detective Dusak and Officers Norman and Fox in other cases, it did not concede that the officers committed misconduct in Appellant's case, nor does Appellant provide affidavits from other officers or any of the Commonwealth's witnesses supporting Appellant's allegations of misconduct in the instant case. Moreover, unlike in *R. Williams*, in which the verdict relied solely on the discredited officer's testimony, the Commonwealth in the instant case presented five eyewitnesses who contradicted Appellant's self-defense claim.[7]

Thus, we agree with the PCRA court that Appellant failed to demonstrate that (1) he could have used the allegations of police misconduct for non-impeachment purposes or (2) the after-discovered evidence would have likely compelled a different verdict, both of which are required to obtain relief under the after-discovered evidence provision of the PCRA. Accordingly, we affirm the PCRA court's dismissal of Appellant's petition.

Order affirmed.

---

[7] Moreover, the PCRA court observed that several of the documents relied upon by Appellant do not constitute "evidence" but rather involve mere allegations of misconduct. PCRA Ct. Op. at 10-11.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 10/23/2025